1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11  MIGUEL ROJAS-CIFUENTES, on        No.  2:14-cv-00697-JAM-CKD
    behalf of himself, on behalf
12  of all others similarly
    situated and in the interest
13  of the general public,           **ORDER DENYING PLAINTIFF'S MOTION
                                     FOR CLASS CERTIFICATION AND
14              Plaintiffs,          APPOINTMENT OF CLASS COUNSEL**

15      v.

16  ACX PACIFIC NORTHWEST INC,
    PACIFIC LEASING, LLC, JOHN M.
17  GOMBOS, JOHN E. GOMBOS and
    Does 1-20,
18
                Defendants.
19

20       Plaintiff Miguel Rojas-Cifuentes ("Rojas" or "Plaintiff")

21  moves for class certification under Rule 23 of the Federal Rules

22  of Civil Procedure.  Mot., ECF No. 58; Mem., ECF No. 59.

23  Defendants ACX Pacific Northwest, Inc. ("ACX"), Al Dahra ACX

24  Global, Inc. ("Al Dahra") and Pacific Leasing, LLC (collectively,

25  "Defendants") oppose Plaintiff's motion.  ECF No. 64.  For the

26  reasons set forth below, the Court grants Plaintiff's motion to

27  certify the subclass identified by Plaintiff as the "Wilmington

28  Auto-Deduct Class" and denies the motion as to the remaining two

                                     1

1  proposed subclasses.[1]

2

3          I.   FACTUAL AND PROCEDURAL BACKGROUND

4          Plaintiff worked for ACX as a non-exempt employee for a

5  little more than one year, up to about May 2013.  Decl. of Miguel

6  Angel Rojas-Cifuentes, ¶ 3, ECF No. 3; Second Amended Compl.

7  ("SAC"), ¶ 7, ECF No. 49.

8          On March 14, 2014, ACX's former employee Pablo Hernandez and

9  Rojas filed their initial wage and hour suit against Defendants,

10 seeking to represent themselves and a class of non-exempt

11 employees employed by, or formerly employed by ACX.  Compl., ECF

12 No. 1 at 2.  On May 6, 2014, Plaintiff filed a First Amended

13 Class Action Complaint (the "FAC"), which no longer included co-

14 plaintiff Pablo Hernandez.  ECF No. 5.  Finally, on October 25,

15 2016, Plaintiff filed a Second Amended Class Action Complaint

16 (the "SAC") after the Court granted his motion to amend the FAC.

17 SAC, ECF No. 49; Order, ECF No. 48.  Seeking to proceed under the

18 California Labor Code Private Attorneys General Act ("PAGA"),

19 Plaintiff has alleged Defendants violated the Fair Labor

20 Standards Act and state wage and hour laws by failing to pay

21 minimum wage; failing to pay overtime compensation; failing to

22 provide meal and rest breaks as a result of donning and doffing

23 and walking time; failing to provide accurate itemized wage

24 statements and failing to pay class members statutory penalties.

25 SAC, ¶ 15.

26 _____

27 [1] This motion was determined to be suitable for decision without
   oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
28 for March 13, 2018.

Plaintiff filed his motion to certify class on November 17, 2017. ECF No. 58. In response, Defendants concurrently filed their opposition and evidentiary objections to Plaintiff's declarations. ECF Nos. 63, 64. The parties then stipulated to the categorization of Plaintiff's three proposed subclasses and to Plaintiff amending the complaint to add Al Dahra ACX Global, Inc. as a defendant because ACX Pacific Northwest changed its name to "Al Dahra ACX Global, Inc." in early 2016. ECF No. 61. After Plaintiff filed his reply brief in support of his motion for class certification, Defendants and Plaintiff both filed notices of supplemental authority. ECF Nos. 66, 69. The parties also stipulated to Plaintiff withdrawing the Declaration of Vicente Arroyo in support of his motion. Obj. to the Decl. of Vicente Arroyo, ECF No. 63-1; Notice of Withdrawal, ECF No. 67. On April 26, 2018, at the Court's request, the parties filed supplemental briefs addressing issues related to resolving Plaintiff's request to certify the proposed Wilmington Auto-Deduct subclass and the proposed Wilmington Meal Period and Stockton Second Meal Period & Third Rest Break subclasses. Minute Order, ECF No. 70; Pl. Supp. Br., ECF No. 71; Defs. Supp. Br., ECF No. 72.

## II.  OPINION

A.  <u>Proposed Subclasses</u>

Plaintiff seeks to certify the following three subclasses:

1.  <u>Stockton Second Meal Period & Third Rest Break Class</u>

All current and former non-exempt hourly employees who worked at Defendants' Stockton, California location (the

"Stockton Branch") from March 14, 2010 to the present that
worked at least one shift greater than 10 hours and up to and
including 12 hours.  Mot. at 3.

2.   Wilmington Meal Period Class

All current and former non-exempt hourly employees who
worked at Defendants' Wilmington, California location (the
"Wilmington Branch") from March 14, 2010 to the present that
worked at least one shift greater than 6 hours and either:
(a) received a short meal period (less than 30 minutes), a late
meal period (after the fifth hour of work), an unrecorded first
meal period; or (b) did not receive a second recorded meal
period for shifts greater than 10 hours.  Mot. at 3-4.

3.   Wilmington Auto-Deduct Class

All current and former non-exempt hourly employees who
worked at the Wilmington Branch from March 14, 2010 to the
present that worked at least one shift greater than 6 hours and
had 30 minutes of pay automatically deducted for a meal period.
Mot. at 4.

B.   Discussion

According to Rule 23(a), a plaintiff seeking to certify a
class must show that "(1) the class is so numerous that joinder
of all members is impracticable; (2) there are questions of law
or fact common to the class; (3) the claims or defenses of the
representative parties are typical of the claims or defenses of
the class; and (4) the representative parties will fairly and
adequately protect the interests of the class."  Fed. R. Civ. P.
23(a).  The plaintiff must then satisfy one of the three Rule
23(b) categories.  In the instant case, the parties focus on the

4

"predominance" and "superiority" requirements under Rule 23(b)(3).

### 1.  Numerosity

Numerosity requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).

### 2.  Commonality

Commonality requires Plaintiff to affirmatively show "that the class members have suffered the same injury."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349-50 (2011) (internal quotation marks and citation omitted).  The class's common contention must be "capable of class-wide resolution."  Id. "Dissimilarities within the proposed class" impede the commonality requirement because they prevent the formation of "even a single common question."  Id. at 350, 359.

### 3.  Typicality

Rule 23(a)(3) requires that the claims or defenses of the class representative "be typical of the claims or defenses of the class."  "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  Dukes, 564 U.S. at 353 (citation omitted). Representative parties' claims are "typical" when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability.  Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001) (abrogated on other grounds) (citing Marison v. Giuliani, 126 F.3d 372, 376 (2nd Cir. 1997)).

///

### 4.  Adequacy

"Adequacy of representation" requires that class representatives "fairly and adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  To determine legal adequacy, the court must resolve whether: (1) the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (internal citation omitted).

### 5.  Predominance

To certify a class under Rule 23(b)(3), the court must find that the questions of law or fact common to class members predominate over any questions affecting only individual members.  The predominance criterion tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  Gonzalez v. Officemax North America, Nos. SACV 07-00452, CV 07-04839, 2012 WL 5473764, at *3 (C.D. Cal. Nov. 5, 2012) (citing Anchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)).

### 6.  Superiority

Class certification under Rule 23(b)(3) also requires that the class action be superior to other available methods for fairly and efficiently adjudicating the controversy.  The elements involved in this inquiry are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class

members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. Pro 23(b)(3)(A)-(D)

      C.   <u>Analysis</u>

          1.   <u>Stockton Second Meal Period & Third Rest Break Subclass</u>

Plaintiff contends that Defendants' policy and practice of providing employees with a second meal period or third rest break only after a shift exceeded twelve hours led to a failure to pay Defendants' employees break premiums, in violation of California Labor Code §§ 226.7(b), 512, Industrial Welfare Commission Wage Order No. 8 ("Wage Order 8"), <u>Brinker Rest. Corp. v. Sup. Ct.</u>, 53 Cal. 4th 1004, 1029, 1042 (2012), and <u>Cummings v. Starbucks Corp.</u>, No. CV 12-06345, 2014 WL 1379119, at *6 (C.D. Cal. Mar. 24, 2014).  Mot. at 3; Mem. at 2, 5 (citing Decl. of Marco Palau ("Palau Decl."), ECF No. 58-1, Ex. 6, ECF No. 58-7).  To support his claim, Plaintiff points to ACX's "ACX Break and Meal Period Schedule" at the Stockton Branch that states that if a worker's shift is "12+" hours then a second 30-minute meal period is provided and a third rest break is provided.  Mem. at 6 (citing Palau Decl., Ex. 6 (the "ACX Schedule")).  Plaintiff also alleges Defendants failed to provide full ten minute rest periods as a result of donning and doffing and walking time.  SAC, ¶ 15-c.

Defendants' Federal Rule 30(b)(6) witnesses testified the ACX Schedule accurately reflected ACX's actual practice, with one of the witnesses later claiming that the "12+" hours listed

on the ACX Schedule was a typo and should have read 10 hours. Palau Decl., Ex. 2, Dep. of Stephanie Magana ("Magana Dep."), 50:7-51:17, ECF No. 58-3; Palau Decl., Ex. 1, Dep. of John E. Gombos ("Gombos Dep."), 92:21-94:25, ECF No. 58-2; Decl. of John E. Gombos ("Gombos Decl."), ¶ 11, ECF No. 62-3.  The ACX schedule is silent on what breaks are available to employees, if any, between hours 10 and 12 of their shift.  Palau Decl., Ex. 6.  At least one of Defendants' former employees did not recall seeing any such schedule being posted at the Stockton Branch. Decl. of Travis Wilson ("Wilson Decl."), ¶ 7, ECF No. 58-15.

In the English and Spanish versions of Wage Order 8 that Defendants' witnesses testify were posted at the Stockton Branch, employees were correctly advised of their entitlement to rest periods at the rate of ten minutes net rest time per four hours or major fraction thereof.  Decl. of Angel Gomez ("Gomez Decl."), ECF No. 62-12, Exs. B-C, ECF Nos. 62-14-15; Gombos Decl., ¶ 17.  The parties' witnesses who worked at the Stockton Branch disagree over whether they normally got appropriate rest breaks.  Wilson Decl., ¶¶ 6-8; Decl. of Frederico Delgado Arroyo ("Arroyo Decl."), ¶¶ 11-19, ECF No. 62-1; Decl. of Reyes Atrian ("Atrian Decl."), ¶¶ 11-17, ECF No. 62-2.

California Labor Code § 512 provides that "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes[.]"  Employers failing to provide meal periods as required by the Wage Order must pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal … is not provided."

Cal. Code Regs. § 11010, subd. 11(B); Cal. Lab. Code § 226.7(b).
Employers incur liability by failing to authorize and permit
rest breaks or the correct number of rest breaks per employee
shift.  <u>Brinker</u>, 53 Cal. 4th at 1033.  An employee, however,
must show that the employer actually prevented the employee from
taking breaks; mere proof of knowledge that the employee was
forgoing breaks is insufficient.  <u>Reece v. Unitrin Auto & Home</u>
<u>Ins. Co.</u>, No. 11-CV-03960, 2013 WL 245452, at *5 (N.D. Cal. Jan.
22, 2013) (citing <u>Brinker</u>, 53 Cal. 4th at 1040).

a.    <u>Commonality</u>

Plaintiff contends that the common questions with respect
to this subclass that are capable of resolution on a class-wide
basis include: (1) whether Defendants maintained a policy of not
providing a second meal period until the twelfth hour of work at
the Stockton Branch; (2) whether Defendants maintained a policy
at the Stockton Branch of not authorizing and permitting a third
rest period until the twelfth hour of work; and (3) whether
Defendants maintained a practice and policy during the class
period that failed to pay break period premiums to employees
that were denied break periods.  Mem. at 6-7.  Plaintiff further
asserts that these questions can be resolved by looking at the
following evidence: Defendants' policy documents; their Rule
30(b)(6) testimony; Defendants' electronic timekeeping records;
and Plaintiff and class member declarations.  Mem. at 7.  The
Court finds otherwise.

In <u>Gonzalez</u>, 2012 WL 5473764, at *4 (C.D. Cal. Nov. 5,
2012), the Central District denied certification of the
plaintiffs' rest break claim because the plaintiffs failed to

9

provide any class-wide evidence that precluded the possibility
that some employees took rest breaks, and that some employees
voluntarily declined to take their rest breaks, at least some of
the time.  The same reasoning applies here.

Plaintiff has presented a facially non-compliant document
(the ACX Schedule) as prima facie evidence of Defendants'
policies at the Stockton Branch.  Palau Decl., Ex. 6.  But
Plaintiff's own declarant does not recall seeing the ACX
Schedule and it is silent on rest periods for shifts between 10
and 12 hours.  Id.; Wilson Decl., ¶ 7.  Further, Defendants'
witnesses question the document's accuracy and testify that
other facially compliant information was posted at the Stockton
Branch.  Gomez Decl. Exs. A-C; Gombos Dep., 92:21-94:25; Gombos
Decl., ¶¶ 11, 17.  In addition, Plaintiff cannot point to any
time records or documents suggesting rest period violations.
See Mot.; see also Not. of Errata Re: Decl. of Aaron Woolfson
("Woolfson Decl."), ECF No. 60.  Without any class-wide evidence
that precludes the possibility of Defendants' employees being
able to take rest breaks, a fact-finder would need to engage in
individual inquiries to determine whether, when, and why an
employee did not take a rest period.

In his Notice of Supplemental Authority, Plaintiff attached
Richardson v. Interstate Hotels & Resorts, Inc., No. 16-06772,
2018 WL 1258192 (N.D. Cal. Mar. 12, 2018), where the Northern
District certified a rest period class.  But in Richardson,
unlike here, the plaintiff's theory of liability was rooted in a
specific practice that pressured the defendants' employees "to
skip their rest periods to catch up on an unreasonable

workload[.]" <u>Id.</u>, at *3. For example, in <u>Richardson</u>, the defendants' employees were usually given fourteen rooms to clean each day, where each room took 30 minutes, leaving no time to finish their other assigned tasks in their allotted seven hour workdays. <u>Id.</u> Here, in contrast, Plaintiff relies heavily on a document rather than a specific practice or policy in support of his motion.

In addition, Plaintiff's conclusory allegation that rest breaks were not available because of employees using those breaks to don and doff and walk are not as specific as the alleged policy in <u>Richardson</u>. SAC, ¶ 15. It is also unclear how a fact-finder could resolve this allegation without needing to conduct individual inquiries, since Plaintiff has not supplied any records, or analysis of any records, involving rest periods. <u>See</u> Mot. Finally, Plaintiff does not provide any authority to support a finding that his donning and doffing rest break allegation is capable of resolution by common proof.

Because a fact-finder could not resolve Plaintiff's claim regarding rest breaks without engaging in myriad individual inquiries, the Court denies certification of the Stockton Second Meal Period & Third Rest Break subclass. <u>See</u> <u>Gonzalez</u>, 2012 WL 5473764, at *4.[2]

///

_____

[2] The Court need not reach Plaintiff's Stockton Branch meal period claims since the rest period claims are incapable of class-wide resolution. The Court therefore also does not need to address the applicability of the <u>Lampe</u> case cited by Defendants in their notice of supplemental authority. <u>See</u> Defs. Not. of Supp. Authorities, ECF No. 66 (citing <u>Lampe v. Queen of the Valley Medical Ctr.</u>, 19 Cal. App. 5th 832 (2018)).

## 2.   Wilmington Meal Period Subclass

Plaintiff claims that Defendants' effective policy and practice of using an ad hoc system charging supervisors with relieving employees for meal periods as production permits led to: (1) employees working longer than six hours and/or ten hours without legally compliant meal breaks; and (2) a failure to pay Defendants' employees break premiums, in violation of California Labor Code §§ 226.7(b), 512, Wage Order 8, Brinker, 53 Cal. 4th at 1029, 1042 (2012).  Mot. at 4; Mem. at 7.  Plaintiff does not allege that Defendants maintained a facially non-compliant policy with regard to providing meal periods for this subclass. Mem. at 8.

To support his claim, Plaintiff points to Defendants' timekeeping records showing 61.1% of Wilmington employee shifts greater than 6 hours had a meal period less than thirty (30) minutes, a meal period occurring after the fifth hour of work, no recorded first meal period, or no second meal period for shifts greater than 10 hours.  Mem. at 8 (citing Woolfson Decl. ¶ 19(i)).  One of Defendants' 30(b)(6) witnesses testified that she cannot remember any meal period premium payments ever being made.  Palau Decl., Ex. 3, Dep. of Esther Gonzalez ("Gonzalez Dep."), 29:25-30:16, ECF No. 58-4.  Plaintiff also points to testimonial evidence that employees were forced to cut their meal periods short as a result of production demands and the need to perform cleaning and donning and doffing activities during and around the time that rest and meal breaks are scheduled.  Mem. at 2 (citing Decl. of Diego Taboada ("Taboada Decl."), ¶¶ 6-7, ECF No. 58-13; Decl. of David Nunez ("Nunez

Decl."), ¶¶ 6-7, ECF No. 58-12).

In California, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes...." 8 Cal. Code Regs. § 11080, subd. 11(A); see also Cal. Lab. Code., § 512, subd. (a). And, as explained above, "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes [.]" Cal. Lab. Code., § 512. Employers incur liability by failing to authorize and permit rest breaks or the correct number of rest breaks per employee shift. Brinker, 53 Cal. 4th at 1033. An employee, however, must show that the employer actually prevented the employee from taking breaks; mere proof of knowledge that the employee was forgoing breaks is insufficient. Reece v. Unitrin Auto & Home Ins. Co., No. 11-CV-03960, 2013 WL 245452, at *5 (N.D. Cal. Jan. 22, 2013) (citing Brinker, 53 Cal. 4th at 1040).

                    a.    Commonality

Plaintiff asserts that the common questions with respect to this subclass that are capable of resolution on a class-wide basis include: (1) whether Defendants maintained an effective policy and practice that systematically discouraged full thirty minute meal periods; and (2) whether Defendants maintained an effective policy and practice of not paying meal period premiums for improperly denied meal breaks. Mem. at 10. Plaintiff contends these questions can be resolved by analyzing the following evidence: Defendants' electronic timekeeping and payroll records; Plaintiff's class member declarations; and

testimony from Defendants' 30(b)(6) witnesses.  The Court disagrees.

In Brinker, Justice Werdegar stated in her concurrence the rebuttable presumption that an employer's failure to keep timekeeping records of meal breaks suggests the employee was not relieved of duty and no meal period was provided.  Brinker, 53 Cal. 4th at 1053 (Werdegar, J., conc.).  This presumption has been applied as persuasive authority by a number of federal courts, including this one.  See e.g., Morales v. Leggett & Platt Inc., No. 15-cv-01911, 2018 WL 1638887, at *5 (E.D. Cal. Apr. 5, 2018) (applying the presumption in certifying auto-deduction subclass); Brewer v. Gen. Nutrition Corp., No. 11-CV-3587, 2014 WL 5877695, at *7 (N.D. Cal. Nov. 12, 2014) (applying the presumption in certifying meal break and rest break subclasses); Ordonez v. Radio Shack, Inc., No. CV 10-7060, 2013 WL 210223, n.9 (C.D. Cal. Jan. 17, 2013) (ruling that the defendant had rebutted the presumption by showing plaintiff had failed to identify any common policy that uniformly deprived employees of the opportunity to take breaks, such that individualized inquiries could be avoided).  But when a plaintiff does not allege a facially unlawful policy, evidence showing some employees may have been deprived of the opportunity to take a proper meal break does not amount to a policy and practice capable of determining an employer's liability on a class-wide basis.  See Ordonez, 2013 WL 210223, at *7 (internal quotation marks and citation omitted).

### i. Time Entry Theory Of Liability

In Ordonez, the Court ruled that "[t]o the extent that

14

plaintiff relies on a presumption that arises from the empirical evidence that many class members had short, late, or missed meal periods, the Court finds that defendant has rebutted this presumption" because "plaintiff failed to identify any common policy that uniformly deprived employees of the opportunity to take meal breaks."  2013 WL 210223, at n.9.  Defendants, like the defendant in Ordonez, have rebutted the presumption from Brinker by showing that Plaintiff has failed to identify any common policy that uniformly deprived employees of the opportunity to take breaks.  2013 WL 210223.  While Plaintiff cites employee time records showing 61.1% of Wilmington employee shifts have short, late, or missing meal periods, this only shows potentially problematic meal periods for some employees. As in Ordonez, showing that some employees may have been deprived of an opportunity to take an uninterrupted meal break does not amount to a "policy and practice capable of determining [Defendants'] liability on a class-wide basis." 2013 WL 210223, at *7 (internal quotation marks and citation omitted).

    As Defendants point out, the time records that Plaintiff cites say nothing about whether an employee failed to clock out for a meal period, or if they forgot to clock out for a meal period at the actual start of the meal period.  Opp. at 5.  The time records, like those in Ordonez, "present[] numerous possibilities as to why certain employees may have had a [non-compliant] meal break during a given shift" and the Court "cannot conclude that any short, late, or missed meal break that plaintiff's expert identified corresponds to a legal violation on a class-wide basis."  2013 WL, 210223, at *7.  The Court

finds that Defendants have rebutted the presumption arising from
the concurrence in Brinker by convincingly arguing that their
time records indicating late meal periods, no meal periods, or
short meal periods for 61.1% of shifts does not reflect a common
policy and practice capable of common resolution on a class-wide
basis.

Plaintiff asserts that this case is like Safeway, Inc. v.
Sup. Ct., 238 Cal. App. 4th 1138, 1153 (2015), where the
California Court of Appeal upheld the trial court's grant of
certification of a meal break claim because the dominant common
question was "did Safeway's system-wide failure to pay
appropriate meal break premiums make it liable to the class
during this period." Mem. at 8-9. That central question
distinguishes this case from Safeway. As explained above in the
discussion and application of Ordonez, Plaintiff has failed to
allege a common policy capable of common resolution on a class-
wide basis. Without being able to resolve that issue, the Court
cannot proceed to determining whether Defendants are liable for
failing to pay meal period premiums for this subclass. Also, as
the court in Wilson v. TE Connectivity Networks, Inc., No. 14-
cv-04872, 2017 WL 1758048, at *7-11 (N.D. Cal. Feb. 9, 2017)
pointed out in distinguishing Safeway, the plaintiff in Safeway
did not request premium wages accrued by class members and moved
for certification under California law and not Rule 23 (citing
Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439,
444 (N.D. Cal. 1994) (noting "differences between [California]
state court's class certification and the certification sought
on [Rule 23] motion")). Because Plaintiff has requested premium

16

1  wages accrued by class members and has moved for certification
2  under Rule 23, his reliance on Safeway is misplaced.
3       Finally, in his supplemental brief, Plaintiff argues that
4  this case is different from Zayers v. Kiewit Infrastructure West
5  Co., No. 16-cv-06405, 2017 WL 4990460 (C.D. Cal. Oct. 26, 2017),
6  where the Central District denied class certification of the
7  plaintiff's second meal period claims because determining
8  whether the defendant failed to give its employees the
9  opportunity to take a second meal break necessarily required an
10  individualized inquiry. Zayers, 2017 WL 4990460 at *3; Pl.
11  Supp. Br. at 6, ECF No. 71. First, Plaintiff contends Zayers is
12  different because the employer in that case had a facially
13  compliant policy and here, Defendants' policy before 2015 did
14  not provide for second meal breaks or third rest breaks. Pl.
15  Supp. Br. at 6 (citing Doc. 65-14 (Handbook effective June 2010
16  to April 2015)). But the Wilmington Meal Period subclass does
17  not involve the second meal break and third rest break claims
18  like Plaintiff's Stockton Second Meal Period & Third Rest Break
19  subclass. This subclass involves claims concerning whether
20  Defendants provided appropriate meal periods before the tenth
21  hour of a shift. Second, Defendants' written policy before 2015
22  is not facially unlawful; it states that "breaks are allowed in
23  the morning and/or afternoon according to applicable state
24  laws." ECF No. 65-14. Finally, Plaintiff concedes in his
25  moving brief that he was not alleging Defendants maintained a
26  facially non-compliant policy statement for its meal breaks at
27  the Wilmington Branch. Mem. at 8.
28       Plaintiff also argues Zayers is different than this case

because in <u>Zayers</u>, the plaintiff did not identify time sheets where he was denied meal premiums, nor did he identify a single instance where he or anyone else missed a meal break. Pl. Supp. Br. at 6 (citing 2017 WL 4990460, at *3). This is a distinction without a difference. As stated above, the <u>Ordonez</u> court found that time records showing some potential violation did not suffice to show a common policy and practice of unlawfully failing to provide meal breaks. 2013 WL 210223, at *7.

### ii. <u>Donning And Doffing Theory Of Liability</u>

Plaintiff's walking-time and donning/doffing theories also cannot be resolved by common proof, since they are highly specific. While Plaintiff provides declarations from former employees claiming they used their meal periods to walk and don and doff (<u>see</u> Taboada Decl. ¶ 6; Nunez Decl. ¶ 6), Defendants respond with declarations from employees claiming they were given options as to the amount of gear they could wear, when and where they could remove it for breaks, and when and where they could put it on when returning to work. Decl. of Edgar Flores ("Flores Decl."), ¶¶ 6-25, ECF No. 62-7; Decl. of Fernando Garcia ("Garcia Decl."), ¶¶ 6-26, ECF No. 62-8. How long it took each employee to put on and remove their safety gear and where they did it would depend on each employee's habits and the specific tasks they were doing that day. So Plaintiff's theories are not susceptible of common proof. <u>Roth v. CHA Hollywood Med. Ctr.</u>, No. 12-cv-07559, 2013 WL 5775129, at *8 (C.D. Cal. Oct. 25, 2013) ("There is no way to determine 'in one stroke' whether a particular break for a particular putative class member was interrupted and to what degree.") (internal

citation omitted).

Because Plaintiff has failed to allege a policy and practice capable of determining Defendants' liability on a class-wide basis, the Court finds he has not satisfied the commonality element and denies certification of the Wilmington Meal Period subclass.

### 3. Wilmington Auto-Deduct Subclass

Plaintiff contends Defendants maintained an unlawful policy and practice of automatically deducting 30 minutes of pay from its employees' daily hours for meal periods at the Wilmington Branch, regardless of whether employees were working during periods of time that the operations should have ceased.  Mot. at 4.  Plaintiff asserts that this policy and practice violated the requirements to pay an additional hour of compensation for missed meal periods, and to provide accurate wage statements in violation of Wage Order 8 and Cal. Labor Code §§ 201-203, 226.7, 510 and 512.  Mot. at 4; Mem. at 10-11.

To support his claims, Plaintiff points to Defendants' time clock data for the Wilmington Branch indicating automatic deductions of 30-minute meal periods when the time keeping did not indicate a punch-out, punch-in for a meal.  Mem. at 3 (citing Woolfson Decl. at ¶ 21(c)).  Specifically, Plaintiff's expert found that there were 9,254 shifts, worked by 121 employees, reflecting a 30 minute meal period-auto-deduction, occurring when an employee worked a shift greater than 6 hours, up to 10 hours, and there was no punch in and punch out for a meal period.  Mem. at 11 (citing Woolfson Decl. at ¶ 21(c)-(d)).

In practice, Defendants' production workers take meal

19

breaks together when the Wilmington Branch ceases operations, but mechanics continue working. Palau Decl., Ex. 4, Dep. of Juan Rivas ("Rivas Dep.") at 19:4-20, ECF No. 58-5. Defendants' employees also testify that they are casual about punching out and punching in for meal breaks. Decl. of Esther Gonzalez ("Gonzalez Decl."), ¶¶ 28-32, ECF No. 62-4; Rivas Decl. ¶¶ 44-47; Gombos Decl. ¶ 6. Defendants' policy and practice involves a human resources employee investigating whether meal periods were provided. The investigation was conducted only for those shifts where no meal break punches had been recorded and the employee authorized removal of 30 minutes of pay only in the absence of "affirmative information that the meal break had actually been missed." Opp. at 6; Defs. Supp. Br. at 3, ECF No. 72; see also Gonzalez Decl., ¶¶ 3, 31-41. Defendants' accounting manager, Esther Gonzalez has performed this function at the Wilmington Branch since November 2011, and declared that she has reviewed the time records to authorize removals of 30 minutes of pay from employees' time sheets. Gonzalez Decl. at ¶¶ 3, 31-41.

Gonzalez also testified in her declaration that "no production employee, mechanic, supervisor, manager, or any other employee has ever given [her] information that there was an improper missed, late, or short meal break." Gonzalez Decl. at ¶ 41. Plaintiff claims, and Defendant does not dispute, that no meal period premium has ever been paid at the Wilmington Branch. Mem. at 2 (citing Gonzalez Dep. at 29:25-30:16); see Opp.; see Defs. Supp. Br.

Auto-deduction policies involve deducting time from

employees' time sheets without maintaining records to support those deductions, on the assumption that employees always take meal breaks. Wilson, 2017 WL 1758048, at *2, 7-11. Even if an employer's supervisors may correct employees' time sheets and remove deductions upon learning that employees did not take a break, no individual inquiries are necessary if such corrections to deductions are "extremely rare." See id., at *11. An auto-deduction subclass "can be certified where [the plaintiff] presents evidence that the employer did not communicate to employees the fact that auto-deduct could be manually reversed or that the employer did not actually implement such reversals." Wilson, 2017 WL 1758048, at *9.

Certification of an auto-deduction subclass is distinct from certification of a rest or meal break subclass because individualized issues more readily predominate in meal and rest break claims. See Wilson, 2017 WL 1758048, at *7 (citing Washington v. Joe's Crab Shack, 271 F.R.D. 629, 641-42 (N.D. Cal. 2010); Jasper v. C.R. England, Inc., No. CV08-5266, 2009 WL 873360, at *5 (C.D. Cal. Mar. 30, 2009); Brown v. Fed. Express Corp., 249 F.R.D. 580, 586 (C.D. Cal. 2008); Kimoto v. McDonald's Corps., No. CV 06-3032, 2008 WL 4690536, at *6 (C.D. Cal. Aug. 19, 2008); Lanzarone v. Guardsmark Holdings, Inc., No. CV06-1136, 2006 WL 4393465, at *4 (C.D. Cal. Sept. 7, 2006)). Citing to time records may fail to support a meal period subclass's claim because those time records may suggest numerous possibilities as to why certain employees may have had a non-compliant meal break. Ordonez, 2013 WL 210223, at *7. But time records showing numerous deductions for meal periods without

supporting records can support an auto-deduction subclass's

claims where reversals of those deductions are extremely rare.

Wilson, 2017 WL 1758048, at *9.

As explained above, numerous district courts have applied

Justice Werdegar's reasoning from Brinker and found that a

rebuttable presumption exists that an employer's failure to keep

timekeeping records of meal breaks suggests the employee was not

relieved of duty and no meal period was provided.  Brinker, 53

Cal. 4th at 1053 (Werdegar, J., conc.).  Defendants still argue

that this presumption is not the law, citing Serrano v. Aerotek,

Inc., 21 Cal. App. 5th 773, 781 (2018) to support their

argument.

In Serrano, the California Court of Appeal rejected the

plaintiff's contention that "time records show[ing] late and

missed meal periods creat[ed] a presumption of violations" and

did not specifically address the presumption from Justice

Werdegar's opinion.  Id.  This language from Serrano does not

stand for the proposition that the presumption from Justice

Werdegar's concurrence cannot be applied as valid law, as

Defendants claim.  Serrano did not involve a class action under

Rule 23 and has limited persuasive value for that reason alone.

Defs. Supp. Br. at 3.  See Wilson, 2017 WL 1758048, at *7-11

(citing Arnold, 158 F.R.D. at 444 in distinguishing Wilson from

Safeway, 238 Cal. App. 4th 1138 (noting "differences between

[California] state court's class certification and the

certification sought on [Rule 23] motion")).  Furthermore, to

the extent Serrano implicitly questions the persuasive value of

the rebuttable presumption from Justice Werdegar's concurrence

in Brinker, this contradicts the analysis from the federal

district courts that have applied the presumption as persuasive

authority.  See e.g., Morales, 2018 WL 1638887, at *5; Brewer,

2014 WL 5877695, at *7; Ordonez, 2013 WL 210223, at n.9.  The

Court rejects Defendants' contention that it should refrain from

applying the rebuttable presumption found in Justice Werdegar's

concurrence in Brinker.

a.   Commonality

Plaintiff asserts that the common question of fact with

respect to this subclass is whether Defendants maintained a

policy that automatically deducted a 30 minute meal period from

workers regardless of whether they took a meal period.  Mem. at

11.  Plaintiff contends this question can be resolved on a

class-wide basis through Defendants' timekeeping records, class

member declarations, and Defendants' 30(b)(6) testimony.  Id.

The Court agrees.

In Wilson, 2017 WL 1758048, at *7-11 (N.D. Cal. Feb. 9,

2017), the court certified an auto-deduction meal period

subclass where their payroll system was programmed to deduct 30

minutes for a meal period unless it was changed by a supervisor.

The defendants in that case argued that they never paid

additional compensation to employees in lieu of missed meal

breaks because employees always received their meal breaks.  Id.

at *11.  Further, the defendants' supervisors had only

overridden an auto-deduction on one occasion.  Id. at *2.  The

Court found the defendants' "assertion is insufficient to defeat

certification" and found that the plaintiffs' claims of the

auto-deduction policy, combined with the employer's extremely

rare corrections to employees' time sheets and never paying meal period premiums, sufficed to satisfy the commonality and predominance requirements.  Id.

Besides Wilson, other courts have also found auto-deduction subclasses satisfy the commonality requirement.  In Villa v. United Site Servs. Of California, Inc., No. 5:12-cv-00318, 2012 WL 5503550, at *6 (N.D. Cal. Nov. 13, 2012), the Northern District Court held that "[t]hough there may be divergent factual predicates concerning how th[e] [auto-deduct] policy affected different employees, it does raise shared legal issues, which is all that is required to satisfy the commonality requirement of Rule 23(a)") (citing Hanlon, 150 F.3d at 1019).  In Harp v. Starline Tours of Hollywood, Inc., No. 14-cv-07704, 2015 WL 4589736, at *6 (S.D. Cal. Jul. 27, 2015), the Southern District Court conditionally certified an auto-deduction subclass in a Fair Labor Standards Act ("FLSA") case where the plaintiff presented evidence that the employer did not implement any reversals of the automatic deduction policy.  Although this case involved certification under the FLSA and not Rule 23, the Wilson court applied its reasoning to its Rule 23 analysis.

Defendants attempt to distinguish Wilson by claiming that most of the employees at the Wilmington Branch did clock in and out.  See Defs. Supp. Br. at 3.  But Defendants fail to explain how this fact negates all of the other deductions that were made when the employees did not clock in or out for their meals.  See Defs. Supp. Br.  Defendants' attempt to distinguish Wilson fails.

Defendants also argue their practice does not constitute an

24

auto-deduction policy, since the account manager has to review payroll records before affecting a deduction of 30 minutes of pay from employees' time sheets. See Opp. at 6; Defs. Supp. Br. at 3-5. Defendants claim this is an individualized, case-by-case process, like the one in Ramirez v. United Rentals, Inc., No. 10-cv-04374, 2013 WL 2646648 (N.D. Cal. Jun. 12, 2013). Defs. Supp. Br. at 4-5. In Ramirez, the Court denied certification and found the deduction policy was lawful because managers exercised discretion over whether to use it and not all managers automatically deducted time for meal breaks. 2013 WL 2646648, at *1, 4-5. But here, the discretion Defendants claim Gonzalez exercised appears illusory. Despite there being 9,254 shifts at the Wilmington Branch during the class period that show a 30 minute deduction without supporting records, Gonzalez testified that nobody has ever claimed that they did not receive an improper meal period. Gonzalez Decl., ¶ 41. This claim is hard to reconcile with Defendants' time records showing more than 9,000 deductions without supporting records. As Plaintiff points out, the accounting manager's claim that she never had to alter any of these 9,000 deductions is suspect. Pl. Supp. Br. at 2.

While Defendants did not implement a computer program to commit an auto-deduction practice, the evidence suggests they implemented an automatic deduction practice where their human resources employee subtracted pay from employees 100% of the time, without any records showing meal periods were actually taken. Defendants may not flip Justice Werdegar's presumption on its head and put the onus on employees to prove they have

been denied a proper meal period when there are no records of meal periods being provided.  See <u>Brinker</u>, 53 Cal. 4th at 1053 (Werdegar, J., conc.).  The Court finds that Defendants' procedures effectively constitute an improper auto-deduction practice.

Finally, Defendants rely on <u>Juarez v. Unified, Ltd.</u>, 2013 Cal. Super. LEXIS 529, at *11 (Cal. Super. Ct. Feb. 22, 2013) for the proposition that "[t]he existence of a class-wide auto-deduct policy, by itself, does not create commonality with respect to unpaid wages."  Opp. at 7.  <u>Juarez</u> appears to be a tentative (not final) ruling by a state trial court, and thus has little persuasive authority in this Court.  2013 Cal. Super. LEXIS 529.

The Court finds it can resolve on a class-wide basis whether Defendants maintained a policy that automatically deducted a 30 minute meal period from workers regardless of whether they took a meal break through Defendants' timekeeping records, class member declarations, and Defendants' 30(b)(6) testimony.  Plaintiff has satisfied the commonality element for the Wilmington Auto-Deduct subclass.

> b.  <u>Numerosity</u>

In their opposition, Defendants argued that Plaintiff failed to set forth any evidence to meet his burden that a Wilmington "auto-deduct" subclass would be "so numerous that joinder of all members is impracticable."  Opp. at 7-8 (citing Fed. R. Civ. P. 23(a)(1)).  But Plaintiff has identified 121 employees who had shifts reflecting a 30 minute meal period auto-deduction.  Mem. at 10.  A proposed subclass of 121

employees satisfies the numerosity requirement.  <u>See</u> <u>Tait v. BSH</u>
<u>Home Appliances Corp.</u>, 289 F.R.D. 466, 473 (citing <u>Jordan v. Los</u>
<u>Angeles Cty.</u>, 669 F.2d 1311, 1319 (9th Cir. 1982), <u>vacated on</u>
<u>other grounds by</u> <u>Cty. of Los Angeles v. Jordan</u>, 459 U.S. 810
(1982)) (ruling that each of the five subclasses satisfied the
numerosity rule because they contained at least forty members).

c.    <u>Typicality</u>

Plaintiff argues that, even though he did not work at the
Wilmington location, his claims are typical of the Wilmington
Auto-Deduct subclass because he has also experienced auto-
deducted meals.  Mem. at 12.  Plaintiff reasons that, as a
result, he asserts the same legal theories inherent in the
proposed Auto-Deduct subclass.  <u>Id.</u> (citing <u>Wang v. Chinese</u>
<u>Daily News, Inc.</u>, 231 F.R.D. 602, 608 (C.D. Cal. 2005), <u>modified</u>
<u>on other grounds in</u> <u>Wang v. Chinese Daily News, Inc.</u>, 737 F.3d
538 (9th Cir. 2013) ("Since the named Plaintiffs raise the same
Labor Code violations as other putative class members, their
claims are typical of the class.")).

Defendants respond that because Plaintiff worked at the
Stockton Branch, where employees were not instructed to clock in
and clock out for their meal periods, he cannot show he was
personally injured by the alleged auto-deduction practices at
Wilmington.  Opp. at 8.  Defendants reason that this means
Plaintiff's claims cannot be typical of the Wilmington Auto-
Deduct subclass's, citing <u>Chavez v. Amerigas Propane, Inc.</u>, No.
CV 13-05813, 2015 WL 12859721 (C.D. Cal. Feb. 11, 2015).  Opp.
at 8.  In <u>Chavez</u>, though, the Court found the plaintiff did not
have standing to represent a class of employees who did not

receive a third rest period when working longer than ten hours
in one day because the plaintiff did not show that he ever
worked more than ten hours in one day. Id. at *18. In
contrast, here, Plaintiff has adduced evidence showing he
received 74 automatic deductions at Stockton during the class
period. Supp. Decl. of Aaron Woolfson ("Woolfson Supp. Decl."),
¶ 13, ECF No. 65-7. So, unlike the plaintiff in Chavez,
Plaintiff has alleged personal injury from the same auto-
deduction practices he has alleged Defendants used at either
location, even if the specific meal period instructions were
different at the two locations. See SAC, ¶¶ 31, 37, 44, 55, 68.

In addition, Plaintiff is not tasked with showing that his
claims are the exact same as the proposed subclass's, but only
that each member's claim arises from the same course of events
and that each class member will make similar legal arguments to
prove Defendants' liability. Armstrong, 275 F.3d at 868.
Plaintiff has satisfied that burden for the Wilmington Auto-
Deduct subclass here: he has alleged injury by Defendants'
alleged auto-deduction policies and will make similar legal
arguments as other class members (i.e., arguing Justice
Werdegar's presumption from Brinker applies where Defendants did
not keep records of employee meal breaks). The Court finds
Plaintiff has satisfied this element for the Wilmington Auto-
Deduct subclass.

4.   Adequacy

Defendants argue Plaintiff failed to establish legal
adequacy because of "conflicts of interest," including "ethical
and fiduciary conflicts in having to choose between class

members who seek to establish statutory violations and those who seek to avoid findings that they are guilty of criminal or civil wrongdoing." Opp. at 14-15. Defendants' conflicts argument rests on the assumption that Plaintiff seeks to represent both non-exempt supervisors and non-exempt employees whom those supervisors oversaw. See id. The cases Defendants rely upon to support this claim are inapposite.

In Mateo v. V.F. Corp., No. C 08-05313, 2009 WL 3561539, at *5 (N.D. Cal. Oct. 27, 2009), the Court found the named plaintiff did not satisfy the adequacy requirement because she herself had management responsibilities, meaning she would have unique defenses from other class members. In contrast, the evidence here does not suggest Plaintiff was a supervisor who would have unique defenses from other class members. In Hughes v. WincCo Foods, No. CV 11-00644, 2012 WL 34483, at *7 (C.D. Cal. Jan. 4, 2012), the court found the defendants had shown an existing conflict in the class by pointing to the plaintiffs testifying in their depositions that their "Department Managers" (who were non-exempt) "bore significant responsibility for" not providing their meal breaks. But here, Defendants have not cited any evidence or allegations by Plaintiff that charge potential class members with significant responsibility for Defendants' violations. See Opp. at 14-15. In addition, neither of these cases involved a proposed auto-deduction subclass such as the one here, where a fact-finder can defer to Defendants' electronic time records and the employer's testimony about their auto-deduction policies and practices. See Mateo, 2009 WL 3561539; Hughes, 2012 WL 34483.

Plaintiff also responds to Defendants' arguments by emphasizing that he does not seek recovery against non-supervisory employees and is suing Defendants for causing the alleged violations through their policies and practices at the Stockton and Wilmington Branches.  Reply at 5.

Defendants then argue that Plaintiff cannot satisfy the adequacy element because he did not seek certification of any minimum wage or overtime claims.  Opp. at n.6 (citing <u>Drimmer v. WD-40 Co.</u>, No. 06-CV-900, 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007) ("A class representative is not an adequate representative when the class representative abandons particular remedies to the detriment of the class.")).  This argument fails because <u>Drimmer</u> did not involve minimum wage or overtime claims and Defendants have provided no other authority holding that a class-plaintiff fails to satisfy the adequacy element by not pursuing minimum wage or overtime claims.  <u>See</u> <u>Drimmer</u>, 2007 WL 2456003; Opp.

Because Plaintiff and his counsel do not have conflicts of interest with other class members and because they have prosecuted this action vigorously on behalf of the class (and presumably will continue to), the Court finds Plaintiff has satisfied the adequacy element for the Wilmington Auto-Deduct subclass.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1020.

> 5.  <u>Predominance</u>

Plaintiff contends he has satisfied this element for the Wilmington Auto-Deduct subclass because liability can be established through employer records and representative testimony, while damages can be established through database

analysis, statistical sampling, and selective direct evidence. See Mem. at 13; Pl. Supp. Br. at 5.

Defendants counter that individualized inquiries would predominate for each of the more than 100 employees that were affected by the auto-deductions, citing Gonzalez for the proposition that meal periods missing from time sheets do not conclusively show missing meal periods. See Opp. at 6-7 (citing Gonzalez, 2012 US 5473764, at *5). This proposition from Gonzalez, however, applied to the meal period claims that the Gonzalez court analyzed. See Gonzalez, 2012 US 5473764, at *4-6. As the Wilson court found, however, auto-deduct claims are different from meal period claims in that individual inquiries do not predominate where an employer implements an auto-deduction policy and almost never makes corrections to employee time sheets nor awards meal period premiums. See Wilson, 2017 WL 1758048, at *7-11 (citing Washington, 271 F.R.D. at 641-42; Jasper, 2009 WL 873360, at *5; Brown, 249 F.R.D. at 586; Kimoto, 2008 WL 4690536, at *6; Lanzarone, 2006 WL 4393465, at *4).

Plaintiff, like the plaintiffs in Wilson, has presented evidence of employer's effective auto-deduction policy and practice through employee time records. Woolfson Decl. ¶ 19(i); See Wilson, 2017 WL 1758048, at *7-11. Further, Defendants have admitted that they have not once reversed an auto-deduction. Gonzalez Decl., ¶ 41. Accordingly, the Court finds common questions predominate over any individual inquiries for this sub-class and Plaintiff has satisfied this element for the Wilmington Auto-Deduct subclass.

///

6.  <u>Superiority</u>

Defendants contend that, because of the minimal support from the putative class, a class action would not be superior to individual actions or grievances brought by individual employees through the California Division of Labor Standards and Enforcement.  Opp. at n.7.  Defendants cite <u>Romero v. Alta-Dena Certified Dairy, LLC</u>, No. CV13-04846, 2014 WL 12479370 (C.D. Cal. Jan. 30, 2014), to support their argument.  <u>Romero</u> is distinguishable for two reasons.  First, the court in <u>Romero</u> ruled that a class action was not superior because the putative class members were part of a union and could pursue their grievances through their respective collective bargaining agreements.  <u>Id.</u> at *2.  Defendants in this case do not claim and have not presented any evidence that the employees are unionized.  <u>See</u> Opp.  Second, the court in <u>Romero</u> did not rule on whether resolving auto-deduction claims on a class-wide basis is superior to separate individual actions.  Here, however, resolving the auto-deduction subclass on a class-wide basis would be superior since the timesheets provide common proof and it would be more efficient to do one large study of the timesheets than separate individual ones.  Finally, Defendants do not explain why or how the support Plaintiff has from the putative class is "minimal" or why that means adjudicating the auto-deduction claims on a class-wide basis is not superior.  <u>See</u> Opp.  The Court finds Plaintiff has adequately shown the superiority of resolving the Wilmington Auto-Deduct subclass's claims on a class-wide basis.

///

1          7.   <u>Trial Plan</u>

2          Defendants claim Plaintiff's motion must be denied because

3    he has not submitted a workable trial plan and his proposal for

4    manageably trying this action with three subclasses fails.  Opp.

5    at 13-14.  Defendants further contend that Plaintiff's

6    suggestions are an improper trial by formula, where his case

7    would be tried through his own testimony and that "of his own

8    biased declarants, through time records that courts have

9    consistently held do not tell the whole story of whether an

10   employee was provided a proper meal period [.]"  <u>Id.</u>

11         To support their argument, Defendants cite footnote ten

12   from <u>Galvan v. KDI Distrib.</u>, No. CV 08-0999, 2011 WL 5116585

13   (C.D. Cal. Oct. 25, 2011).  In <u>Galvan</u>, the Court found the

14   plaintiff had presented a workable trial plan when his counsel

15   represented that he would prove claims relying "almost

16   exclusively on the documents and testimony that have been and

17   will be provided by [defendant]" and that he would use expert

18   testimony to analyze those documents and show how they supported

19   the plaintiff's claims.  <u>Id.</u>, at *12.  The same is true here for

20   Plaintiff's case and the Wilmington Auto-Deduct subclass (the

21   only one the Court will certify).  Plaintiff and the subclass's

22   claims can be resolved through Plaintiff's counsel's

23   presentation of the time records and Woolfson's analysis of

24   those time records.  The Court rejects Defendants' argument that

25   certification should be denied because Plaintiff has failed to

26   submit a workable trial plan.

27         Plaintiff has satisfied all of the Rule 23 elements for the

28   Wilmington Auto-Deduct subclass.  His motion to certify this

subclass is granted.

D. Evidentiary Objections

Defendants and Plaintiff assert a number of evidentiary objections to the other party's declarations, both expert and non-expert. ECF Nos. 63, 65-1-6. The Court will address them in turn.

1. Plaintiff's Request to Strike

Plaintiff requests striking the declarations of Ramses Herrera, Kristian Cortes, and Jorge Mena because Defendants failed to disclose any of them pursuant to Federal Rule of Civil Procedure 26. Pls. Objs., ECF No. 65-2.

A party failing to make the required initial disclosure "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Yeti By Molly, Ltd. V. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

Plaintiffs assert that neither Defendants' Rule 26 disclosures, nor any of the aforementioned class member name and contact lists produced by Defendants during discovery included the names and contact information for putative class members Ramses Herrera, Kristian Cortes, and Jorge Mena. Pls. Obj. (citing Supp. Decl. of Marco Palau, ¶ 3). Because Defendants did not make these names and contact information available to Plaintiffs before filing their opposition, the Court grants Plaintiff's request to strike these declarations and has not considered them in ruling on this motion.

///

2.   Non-Expert Declarations

Plaintiffs also object to the declarations of Frederico Delgado Arroyo, Reyes Atrian, Kristian Cortes, Edgar Flores, Fernando Garcia, Jorge Mena, John Gombos, Angel Gomez, Esther Gonzalez, and Juan Rivas.  Pl. Objs., ECF Nos. 65-2-6. Defendants object to the declarations of Arturo Flores, David Nunez, Diego Taboada, Marco A. Palau, Miguel Rojas-Cifuentes, Travis Wilson.  Def Objs., ECF Nos. 63-1-4 and 63-6-7.  As explained above, the Court has not considered the stricken declarations of Kristian Cortes and Jorge Mena.

In general, strict adherence to the Federal Rules of Evidence is not a prerequisite for class certification and courts may consider inadmissible evidence in determining whether to certify a class.  Smith v. Microsoft Corp., 297 F.R.D. 464, 474 (internal citations omitted) (denying plaintiff's objections because the court could consider inadmissible evidence); see also Brooks v. Darling Int'l., 14-cv-01228, 2017 WL 1198542, at * 2-3 (E.D. Cal. Mar. 31, 2017) (citing Gonzalez v. Millard Mall Svcs., Inc., 281 F.R.D. 455, 459-60 (S.D. Cal. 2012) in denying motions to strike data sheets that were neither notarized nor signed under penalty of perjury).

Because the Court may consider inadmissible evidence in determining whether to certify a class, it overrules both parties' objections to the non-expert declarations in toto.  See Smith, 297 F.R.D. 464, 474.

3.   Woolfson Declaration

Defendants argue Plaintiff's expert's declaration should be stricken because his report did not provide a list of all other

35

cases in which he testified as an expert in the previous four years.  Defs. Obj., ECF 63-5.  Defendants also make a number of objections to specific parts of Woolfson's declaration.  Defs. Objs. At 3-9.

Where expert testimony is introduced in support of a motion for class certification, the Court must act as a gatekeeper to exclude junk science by making sure that testimony is reliable and not speculative or irrelevant.  <u>Smith</u>, 297 F.R.D. 464 (internal citation and quotation marks omitted).[3]

District courts apply the <u>Daubert v. Merrell Down Pharms., Inc.</u>, 509 U.S. 579, 597, (1993) analysis in determining motions to strike expert declarations.  <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 982 (9th Cir. 2011).  This analysis requires considering whether (1) the reasoning or methodology underlying the testimony is scientifically valid; and (2) whether the reasoning or methodology properly can be applied to the facts at issue.  <u>Daubert</u>, 509 U.S. at 592-93.

Woolfson provided in his declaration a comprehensive list of the different cases where his work has been used.  <u>See</u> Woolfson Decl. at 2-4; Woolfson Decl. Ex. A, ECF No. 60-2.  The Court rejects Defendants' request to strike Woolfson's declaration on this basis.

Defendants also argue that Woolfson's declaration should be stricken because he made (and concedes he made) a coding error

_____

[3] Neither the <u>San Diego Comic Convention v. Dan Farr Prods.</u>, 14-cv-1865, 2017 WL 4005149 case that Defendants rely on nor its superseding opinion, 2017 WL 4227000, involved a motion for class certification. So the Court has not applied the case's evidentiary analyses in resolving the party's expert witness objections here.

that led to him identifying almost four times as many shifts
with a recorded meal break after the fifth hour than the
timekeeping data suggests.  See Defs. Obj. at 3-9.  First, the
portion of Woolfson's deposition that Defendants cite does not
suggest he concedes he made a coding error.  Ex. D to Gomez
Decl., Depo. of Aaron Woolfson, at 40:6-25, ECF No. 62-16.
During the deposition, Woolfson was asked "is the purpose of the
snippet that we see that you are trying to count instances where
a meal break was recorded after the end of the fifth hour? 'A:
No.'"  Id. at 40:6-10.  Woolfson then went on to explain that
the referenced snippet just represented shifts that were greater
than five hours.  Id. at 40:12-25.  In the context of the
deposition, it seems Woolfson specifically denied that he made
the so called "error" on a portion of the "snippet" Defendants
were referring to.  Defendants also do not appear to
specifically reference the snippet on which this alleged error
was made.  See Defs. Obj.

In addition, Defendants' expert's declaration does not
convince the Court that Woolfson made a coding error.
Defendant's expert, Robert W. Crandall, testifies that Woolfson
"committed a coding error" but does not specifically explain
what the error was.  See Decl. of Robert W. Crandall, ¶ 20, ECF
No. 62-11.  Instead, he states in a conclusory fashion that his
review of the timekeeping data reveals 75% fewer shifts where a
meal break was recorded after the fifth hour, without
highlighting where in the timesheet he sees this.  Id.  Crandall
also did not explain how the alleged coding error led Woolfson
to err in reporting that there were 9,254 shifts worked by 121

employees that showed an auto-deduction.  See id.; Woolfson
Decl., ¶ 21-b.  The Court denies Defendants' request to Strike
Woolfson's declaration on the basis of the alleged coding error.

Finally, Defendants object to Woolfson's declaration as
being speculative or not supported by facts because he looked
for instances of the Wilmington Branch's auto-deductions being
implemented.  Defs. Objs. at 7.  To support their argument,
Defendants cite Gonzalez's testimony that she did a case-by-case
review of all employee time sheets before making a deduction.
See id.  As explained above, however, Gonzalez made a deduction
100% of the time, so her testimony does not clearly undermine
the idea of an alleged auto-deduction policy.  The Court also
rejects Defendants' "vague, ambiguous, and uncertain"
objections—these objections are not related to Woolfson's
qualifications as an expert and go to the weight of his evidence
rather than the admissibility.  See id. at 8.

The Court finds Woolfson's testimony passes the Daubert
test because (1) he has explained how he structured Defendants'
time keeping data using various computer programs like Microsoft
SQL Query Analyzer, Microsoft Excel, and Microsoft Visual Studio
to generate his conclusions (see Woolfson Decl. at 7-14) and (2)
he has demonstrated experience in doing similar analyses in many
other class-action cases and in other contexts. See Woolfson
Decl. at 2-5.

4.  Crandall Declaration

Plaintiff objects to Crandall's declaration, but does not
appear to seek to strike it on the basis of a lack of expert
qualifications.  Pl. Obj., ECF No. 65-1.  Plaintiff's objections

1  are based on Crandall's testimony purportedly being "legally
2  irrelevant, spurious, or logically unsound."  Pl. Obj. at 1.
3  These objections go to the weight of the evidence and not the
4  admissibility.  Because the Court may consider inadmissible
5  evidence in determining whether to certify a class, it overrules
6  Plaintiff's objections to Crandall's declaration.  See Smith,
7  297 F.R.D. 464, 474.

8              5.    The ACX Break And Meal Period Schedule

9       Plaintiff also argues in footnote two of his reply that the
10  Court should "disregard the purported errata pages attached as
11  Exhibit A to the Declaration of Mr. Gomez, and consider the
12  excerpts of the Deposition of Esther Gonzalez as submitted."
13  Reply at n.2.  Plaintiff's argument is made in the context of
14  discussing the purported typo on the ACX Break And Meal Period
15  Schedule which lists additional breaks after 12 hours instead of
16  10 hours.  Plaintiff cites to a court reporting officer's email
17  that they did not receive any errata pages.  See Reply at n.2
18  (citing Supp. Decl. of Marco A. Palau, Ex. 4, ECF No. 65-12).

19      First, Magana submitted the purported errata sheet and not
20  Gonzalez.  Second, as explained above, the ACX Break And Meal
21  Period Schedule is not a "smoking gun" document.  Again, the
22  Court may consider inadmissible evidence and denies Plaintiff's
23  request to disregard the purported errata pages.  See Smith, 297
24  F.R.D. 464, 474.  But the Court notes this decision is not
25  dispositive to its ruling on this motion.

26

27                       III.   ORDER

28      For the reasons set forth above, the Court GRANTS

Plaintiff's motion to certify the subclass identified by Plaintiff as the "Wilmington Auto-Deduct Class."  The Court DENIES Plaintiff's motion to certify either of the other two proposed subclasses.

IT IS FURTHER ORDERED that Plaintiff Miguel Rojas-Cifuentes is appointed Class Representative, and Mallison & Martinez is appointed as Class Counsel.

IT IS SO ORDERED.

Dated: May 17, 2018

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE