1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MIGUEL ROJAS-CIFUENTES,                    No.  2:14-cv-00697-CKD

12                    Plaintiff,

13          v.                                    ORDER

14    ACX PACIFIC NORTHWEST INC., et al.,

15                    Defendants.

16

17          Plaintiff Miguel Rojas-Cifuentes brings this putative class action against Defendants Al

18    Dahra ACX Global, Inc. (formerly ACX Pacific Northwest Inc.) ("Al Dahra"); Pacific Leasing,

19    LLC; John M. Gambos; and John E. Gambos alleging class violations of the Fair Labor Standards

20    Act ("FLSA"), California Labor Code, and California's Unfair Competition Law. (ECF No. 49 at

21    ¶¶ 28-82.) Plaintiff also brings an individual claim against Al Dahra, Pacific Leasing, and John E.

22    Gombos for violation of California Civil Code section 51.7, and a claim under the California

23    Labor Code Private Attorney General Act ("PAGA"). (*Id.* at ¶¶83-101.) On April 2, 2024,

24    Plaintiff moved for preliminary approval of class action settlement. (ECF No. 93.) Defendant did

25    not oppose the motion. The matter was taken under submission for a decision on the papers. (ECF

26    No. 94.) Following the consent of all parties, this case was reassigned to the undersigned

27    Magistrate Judge for all purposes. (ECF No. 96, 97, 99.) On March 28, 2025, the Court held a

28    hearing on the motion. Attorneys Hector Martinez, Cody Bolce, and Stan Mallison were present

1    for Plaintiff. Plaintiff Miguel Rojas-Cifuentes was also present. Attorney Jason Campbell was

2    present for Defendants. For the reasons discussed below, the Court GRANTS Plaintiff's motion

3    for preliminary approval of class action settlement on the terms provided at the conclusion of this

4    order.

5    **I.    BACKGROUND**

6        A.    <u>Factual and Procedural Background</u>

7        On March 13, 2014, plaintiff[1] brought a putative class action on behalf of himself, the

8    State of California pursuant to the California Labor Code Private Attorney General Act

9    ("PAGA"), and similarly situated individuals within the State of California. (ECF No. 1.) On

10   October 25, 2016, plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 49.) On

11   November 14, 2016, defendants answered the SAC (ECF No. 52) and filed an amended answer

12   on January 27, 2017 (ECF No. 55). In the motion and Settlement Agreement, plaintiff requests

13   leave to file a third amended complaint that removes the Fair Labor Standards Act ("FLSA")

14   claim only. (ECF No. 98 (Settlement Agreement[2]) at § III.K; ECF No. 93 at 27 n.4; *see* ECF No.

15   93-6.) Pursuant to Federal Rule of Civil Procedure 15(a)(2), this request is granted. However,

16   because the parties cite to the SAC in their motion, the Court will also refer to the SAC.

17       Plaintiff alleges that he was employed within the State of California as a non-exempt

18   automobile mechanic at defendants' facilities. (ECF No. 49 at ¶¶ 7, 8.) Plaintiff brings this action

19   on behalf of himself individually; as a Federal Rule of Civil Procedure 23 representative of a

20   class or various subclasses of non-exempt employees employed by, or formerly employed by Al

21   Dahra; as a FLSA class representative; and as a non-class PAGA representative standing "in the

22   shoes" of the State of California. (*Id.* at ¶ 1.) Plaintiff alleges that for at least four years prior to

23   the filing of this action, defendants' policies and practices violated the California Labor Code and

24

25   ---

     [1]  The initial complaint was brought by two plaintiffs, Miguel Rojas-Cifuentes and Pablo
     Hernandez. (See ECF No. 1.) Pablo Hernandez was terminated from the suit on May 6, 2014.

26   (See ECF No. 5.)

27   [2]  On May 9, 2024, plaintiff filed a second copy of the Settlement Agreement that is signed by all
     parties. (ECF No. 98.) The Settlement Agreement filed with this motion was not signed by

28   defendants. Therefore, the Court will cite to the Settlement Agreement that is signed by all
     parties. (ECF No. 98.)

1   the California Business and Professions Code section 17200, et seq. (*Id.* at ¶ 15.) In addition,

2   plaintiff, on behalf of himself, and other current and former employees in California, in addition

3   to the claims set forth under the California Labor Code and the California Business and

4   Professions Code section 17200, et al., brings a PAGA action. (*Id.* at ¶¶ 83-94.)

5          Plaintiff's asserted class action claims include: (1) overtime violations of the Fair Labor

6   Standards Act; (2) failure to pay state minimum wages against Al Dahra and Pacific; (3) failure to

7   pay state overtime wages against Al Dahra and Pacific; (4) failure to provide rest periods and

8   meal periods or compensation in lieu thereof against Al Dahra and Pacific; (5) failure to pay

9   timely wages after termination or resignation against Al Dahra and Pacific; (6) failure to provide

10  itemized employee wage statement provisions against Al Dahra and Pacific; and (7) acts in

11  violation of unfair competition law against Al Dahra and Pacific. Plaintiff brings a claim for acts

12  in violation of the PAGA against all defendants; and individually brings a claim for a violation of

13  the right to be free from violence or intimidation against AL Dahra, Pacific, and John E. Gombos.

14  The proposed Class Members include "all non-exempt employees who are employed or have

15  been employed by DEFENDANTS in California within four (4) years of the filing of the original

16  Complaint in this action." (ECF No. 49 at ¶ 18.) The Court already certified a sub-class defined as

17  "all current and former non-exempt hourly employees who worked at the Wilmington Branch

18  from March 14, 2010 to the present that worked at least one shift greater than 6 hours and had 30

19  minutes of pay automatically deducted for a meal period." (ECF No. 73.) Plaintiff seeks a

20  conditional certification of a broader class for settlement purposes. (ECF No. 93 at 25.)

21         After engaging in extensive investigation and discovery, and a mediation session in

22  August 2023, the parties executed a settlement agreement. (ECF No. 93 at 4; ECF No. 93-1 at 4.)

23  On April 2, 2024, plaintiff moved for preliminary approval of the settlement. (ECF No. 93.) The

24  unopposed motion for preliminary approval of class action settlement (ECF No. 93) is now before

25  the Court.

26         B.      Terms of the Proposed Settlement Agreement

27         The Settlement Agreement contains a release of all claims that are based on, arising out

28  of, or relating to the facts or allegations set forth in the SAC against defendants by the proposed

3

class. (Settlement Agreement §§ I.EE, III.I.2.) The proposed class is defined as "all current and former non-exempt employees who worked for Al Dahra in the State of California at any time during the period from March 14, 2010, through October 15, 2023 (the respective timeframe is referred to as the 'Class Period'." (Settlement Agreement at § I.D). There is a sub-class named the Wilmington Auto-Deduct Sub-Class, which means "all current and former non-exempt hourly employees who worked at the Wilmington, California location of Al Dahra at any time from March 14, 2010 up to May 17, 2018 and worked at least one shift greater than 6 hours and had 30 minutes of pay automatically deducted for a meal period." (Id. at § I.LL.) The Settlement Agreement also contains a release of all claims that were asserted or could have been asserted in the SAC against defendants by the proposed PAGA Group. (Id. at §§ I.FF, III.I.3.) PAGA Group means "all current and former non-exempt hourly employees who worked for Al Dahra within the State of California at any time during the period from January 13, 2013, through October 15, 2023 (the respective timeframe is the 'PAGA Group'." (Id. at § I.Y.) Plaintiff has agreed to release defendants from the class claims and the PAGA claims. (Id. at § III.I.1.) Plaintiff has also agreed to a general release of claims. (See id.) The proposed class consists of an estimated 800 class members. (ECF No. 93-1 at 2.)

In return for the release of claims from these individuals, the Settlement Agreement provides for a non-reversionary gross settlement amount of $2,000,000. (Settlement Agreement at §§ I.Q, III.B.)

The Settlement Agreement proposes deducting from the $2,000,000 gross settlement amount the following:

(a) Class representative payment not to exceed $55,375 allocated as follows:

    i.    $10,000 in recognition of the plaintiff's efforts and work in prosecuting the action on behalf of Class Members and PAGA Group Members; and

    ii.   $45,375 in exchange for a general release of his claims (including his individual, non-class claim);

(b) Class counsel's attorney fees not to exceed $666,667 (33.3% of the gross amount);

(c) Class counsel's litigation costs not to exceed $50,000;

(d) Settlement Administrator costs to be determined and provided to the Court and counsel for all parties no fewer than ten calendar days before the Final Approval Hearing; and

(e) A PAGA payment of $75,000 to be paid to the Labor Workforce and Development Agency ("LWDA") out of an overall PAGA award of $100,000.[3]

(Settlement Agreement at § III.C.) The above deductions, if fully approved, would yield a Net Settlement Amount of $1,141,958.[4] (See ECF No. 92 at 6.)

As proposed, the Net Settlement Fund would be distributed across all class members on a pro rata basis. The individual class payments are based on the number of class workweeks attributed to a class member during the class period. (Settlement Agreement at § III.E.) A class workweek means the weeks a class member performed work during the class period excluding all workweeks where a class member took forty hours of vacation or was on a leave of absence. (Id. at § I.G.) Individual PAGA payments will be based on the number of PAGA workweeks attributed to a PAGA group member during the PAGA period. (Id. at § III.E.) A PAGA workweek means the weeks a PAGA group member worked as a GAPA group member during the PAGA period excluding all workweeks where a PAGA Group Member took forty hours of vacation or was on a leave of absence. (Id. at § I.AA.) A Settlement Administrator will determine the amounts of all individual class payments and individual PAGA payments. (Id. at § III.E.) For the individual class, the net settlement amount will be divided based on a point scale. Class workweeks worked by Wilmington Auto-Deduct Sub-Class member will be given two settlement points and class workweeks worked by all other class members will be given one settlement point. (Id. at § III.E.1.) The total number of settlement points will be added together and the net settlement amount will be divided by the total points to reach a dollar value per point. (Id.) The point value will be multiplied by each class member's number of settlement points to determine

---

[3]  As discussed below, PAGA requires that 75% of PAGA penalties recovered go to the LWDA and 25% to the aggrieved employees. Cal. Lab. Code § 2699(i). Accordingly, the Settlement Agreement directs the remaining $25,000 (25% of $100,000) to be distributed among the PAGA class members, proportionally based on the number of PAGA workweeks worked during the PAGA period. (Settlement Agreement at § III.C.4.)

[4]  Plaintiff states the net settlement amount is $1,152,947, but based on the chart provided, the Court calculates the value to be $1,141,958.

1  the individual settlement share. (Id.) The Settlement Administrator will also determine each

2  PAGA group member's individual PAGA payment from the individual PAGA fund. (Id. at

3  § III.E.2.) The Settlement Administrator will divide the individual PAGA fund by the aggregate

4  total number of PAGA workweeks, resulting in the PAGA Workweek Value. The PAGA

5  workweek value will be multiplied by the PAGA group member's total number of PAGA

6  workweeks. (Id.) Plaintiff's counsel estimates that the proposed settlement will provide class

7  members a recovery of "$1,400 per employee on average." (ECF No. 93 at 6.)

8       The Settlement Agreement requires the Settlement Administrator to mail out notices of

9  the class action settlement. (Settlement Agreement at § III.F.2.a, b, g.) Within fifteen calendar

10  days of preliminary approval of the settlement, Al Dahra will provide the Settlement

11  Administrator with the class list and data. (Id. at § III.F.2.e.) The Settlement Administrator will

12  mail the notice packet to the class members within ten calendar days after receiving this list. (Id.

13  at § III.F.2.g.) Class members will be allowed thirty days from the mailing of the proposed Notice

14  Packet to challenge dates of employment, workweeks, submit written objections or opt-out of the

15  settlement class. (Id. at §§ I.HH, III.F.2.h.; ECF No. 93-3.) Class members who wish to opt out

16  may do so by written request and will not be bound by the class release provisions; class members

17  who remain in would ultimately receive their portion of the net settlement award by check.

18  (Settlement Agreement at § III.F.2.c; ECF No. 93-3 at 6; *see* Settlement Agreement at § III.F.5.)

19  The Settlement Agreement provides PAGA class members receive automatic membership and

20  there is no opt-out or exclusion option. (Settlement Agreement at § III.2.c.vi; ECF No. 93-3 at 5-

21  6.) The Class Notice also conveys to PAGA class members that they may not opt out and releases

22  "any and all claims for civil penalties alleged under California Labor Code section 2698 et seq.

23  (PAGA) that: were asserted in any complaint in the Action and/or Plaintiff's letter(s) and

24  communications with the LWDA . . . ." (ECF No. 93-3 at 5.) The Class Notice informs the class

25  members that opting out of the Rule 23 class does not affect the PAGA settlement. (*Id.* at 5-6.)

26  **II.    DISCUSSION**

27       In the instant motion, Plaintiff seeks an order (1) granting preliminary approval of the

28  proposed class settlement; (2) granting conditional certification of the settlement class;

1   (3) approving and directing distribution of the class notice and related materials to the class;

2   (4) appointing the class representative, class counsel, and settlement administrator; (5) granting

3   plaintiff leave to file a third amended complaint; and (6) setting a final approval schedule. (ECF

4   No. 93.)

5                    **Legal Standards – Rule 23 Class Settlements and PAGA Settlements**

6          When parties seek approval of a class settlement before class certification, courts must

7   analyze "both the propriety of the certification and the fairness of the settlement." Staton v.

8   Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003); see Fed. R. Civ. P. 23(e) ("The claims, issues, or

9   defenses of a certified class—or a class proposed to be certified for purposes of settlement—may

10  be settled, voluntarily dismissed, or compromised only with the court's approval."). Accordingly,

11  the Court considers whether the proposed class meets the certification requirements, and whether

12  the proposed settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at

13  952 (citation omitted). At the preliminary approval stage, the Court considers the likelihood that it

14  will ultimately approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). The final approval

15  stage comes after notice to and feedback from the class and a fairness hearing. Fed. R. Civ. P.

16  23(e)(2).

17         Although this action largely consists of class claims, it also includes a claim for penalties

18  under PAGA. PAGA claims are distinct from class claims. See Kim v. Reins Int'l Cal., Inc.,

19  9 Cal. 5th 73, 86-87 (2020) ("[A] representative action under PAGA is not a class action[,]" but

20  rather one "on behalf of the government." (quotations omitted)). This is because "[p]laintiffs may

21  bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected

22  employees." Id. at 87; see Viking River Cruises, Inc. v. Moriana, 596 U.S. 639, 644-45 (2022)

23  (explaining how California law characterizes PAGA as creating a "type of qui tam action" with

24  the representative private plaintiff acting in place of the government (quoting Iskanian v. CLS

25  Transp. Los Angeles, LLC, 59 Cal. 4th 348, 382 (2014)). Because a PAGA claim is not "a

26  collection of individual claims for relief" like a class action, Canela v. Costco Wholesale Corp.,

27  971 F.3d 845, 855-56 (9th Cir. 2020) (discussing Kim's holding), PAGA claims "need not satisfy

28  Rule 23 class certification requirements," Hamilton v. Wal-Mart Stores, Inc., 39 F.4th 575, 583

(9th Cir. 2022). However, like class action settlements, PAGA settlements must be approved by the court. Cal. Lab. Code § 2699(s)(2). Courts in this circuit apply "a Rule 23-like standard," asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019).

**Analysis**

**A.  Provisional Class Certification under Rule 23(a), (b)(3), and (g)**

Rule 23 establishes five prerequisites for any class certification: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy of representation; and (5) one of the three options under Rule 23(b). See Fed. R. Civ. P. 23(a) and (b); Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2013). Relevant here, Rule 23(b)(3) states that class action may be maintained only if "questions of law or fact common to class members predominate over any questions affecting only individual members" and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." If the class is certified, the court must appoint class counsel and a class representative. Fed. R. Civ. P. 23(e), (g).

To reiterate, Plaintiff seeks conditional certification of a class defined as "all current and former non-exempt employees who worked for Al Dahra in the State of California at any time during the period from March 14, 2010, through October 15, 2023." (Settlement Agreement at § I.D.) The members of the proposed class would be required to release all of the following claims including for:  rest periods; meal periods, including rounding violations and automatic deductions; pay for all hours work, including but not limited to alleged off-the-clock work and alleged rounding violations (including for alleged unpaid donning/doffing and walking time); calculation of the regular rate and/or overtime/double time pay; improper deductions from wages; improper deductions of wages; forfeiture of wages; timeliness of wages; payment of wages at separation of employment; and others. (Settlement Agreement at § I.EE.)

**1.  *Prior Certification of Wilmington Auto-Deduct Sub-Class***

In a May 18, 2018, the Court issued an order granting certification for the Wilmington Auto-Deduct Sub-Class and denying certification for two other sub-classes, the Stockton Second Meal Period & Third Rest Break Class and the Wilmington Meal Period Class. (See ECF No. 73.)

The two sub-classes that were denied asserted some of the released claims in this Settlement

Agreement. (See id.) The Stockton Second Meal Period & Third Rest Break Class included "[a]ll

current and former non-exempt hourly employees who worked at Defendants' Stockton,

California location (the "Stockton Branch") from March 14, 2010 to the present that worked at

least one shift greater than 10 hours and up to and including 12 hours." (Id. at 3-4.) The

Wilmington Meal Period Class included "[a]ll current and former non-exempt hourly employees

who worked at Defendants' Wilmington, California location (the "Wilmington Branch") from

March 14, 2010 to the present that worked at least one shift greater than 6 hours and either:

(a) received a short meal period (less than 30 minutes), a late meal period (after the fifth hour of

work), an unrecorded first meal period; or (b) did not receive a second recorded meal period for

shifts greater than 10 hours." (Id. at 4.) The Court denied certification of the Stockton Second

Meal Period & Third Rest Break subclass because plaintiff's claim could not be resolved without

engaging in individual inquiries. (Id. at 11.) The Wilmington Meal Period subclass was denied

because plaintiff did not identify a policy and practice capable of determining defendants'

liability on a class-wide basis. (Id. at 19.)

Under the terms of the proposed settlement, the certified class would be expanded. (See

ECF No. 93 at 25 (plaintiff seeks to conditionally certify a broader class).) It appears that this

broader class would include the subclasses and claims that previously were determined to be

unsuitable for certification. Courts have the discretion to "amend or alter the class definition at

any time before a decision on the merits" and "can expand the scope of a settlement class." Spann

v. J.C. Penney Corp., 314 F.R.D. 312, 318 (C.D. Cal. 2016) (citation omitted). However, "the

propriety of certification cannot be assumed." Id. Plaintiff has not provided any argument about

why it is appropriate to conditionally certify this expanded class.

However, formal class certification is not a prerequisite for preliminary approval and

courts often take a more cursory approach to preliminary certification analysis because it is non-

final. Newberg on Class Actions § 13:18 (6th ed.) (citing Dearaujo v. Regis Corp., 2016 WL

3549473, at *6 (E.D. Cal. June 30, 2016) ("[D]espite the Supreme Court's cautions in Amchem . .

. , a cursory approach appears the norm."); In re: Amtrak Train Derailment in Philadelphia,

1  Pennsylvania, 2016 WL 1359725, at *4 (E.D. Pa. Apr. 6, 2016) ("[A] settlement class can be

2  preliminarily certified based on a less rigorous analysis than that necessary for final

3  certification."); In re Processed Egg Prod. Antitrust Litig., 2014 WL 828083, at *2 (E.D. Pa. Feb.

4  28, 2014) (at the preliminary approval stage, "the Court must determine whether the proposed

5  class should be conditionally certified, and leave the final certification decision for the Fairness

6  Hearing.").

7        As discussed below, because the Rule 23 requirements for the proposed class are met, and

8  because the standard to preliminary certify a class is less rigorous than necessary for final

9  certification, conditional class certification of the expanded class is warranted for the purposes of

10  preliminary approval of the class action settlement. See Shiferaw v. Sunrise Senior Living Mgmt.,

11  Inc., 2017 WL 11704359, at *8-12 (C.D. Cal. Mar. 29, 2017).

12        **2.   *Numerosity***

13        For class certification, the class must be "so numerous that joinder of all members is

14  impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of

15  the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of Nw., Inc. v.

16  EEOC, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class

17  comprises as few as 39 members, where joining all class members would serve only to impose

18  financial burdens and clog the court's docket. See Murillo v. Pac. Gas & Elec. Co., 266 F.R.D.

19  468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit guidance regarding

20  numerosity and listing cases). Plaintiff estimates there are approximately 800 members in the

21  putative class. (ECF Nos. 93 at 19, 93-1 at ¶ 2.) Maintaining this number of individual suits based

22  on the same claims and facts would be impractical. "Courts have routinely found the numerosity

23  requirement satisfied when the class comprises 40 or more members." EEOC. v. Kovacevich "5"

24  Farms, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). With a proposed class of 800

25  members Plaintiff satisfies the numerosity requirement.

26        **3.   *Commonality***

27        Second, there must be "questions of law or fact common to the class" to be certified. Fed.

28  R. Civ. P. 23(a)(2). To satisfy commonality, the class representative must demonstrate that the

litigation will "depend upon a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011). "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013) (quoting Wal-Mart, 564 U.S. at 350).

Here, Plaintiff contends that common questions of fact and law exist based on the following: "Plaintiff's claims involve common questions of both law and fact regarding Defendants' alleged failure to provide timely, compliant meal periods of the proper duration." (ECF No. 93 at 25; see ECF No. 93-1 at ¶ 36.) Further, Plaintiff alleges that these violations plainly appear on the face of defendants' records. (ECF No. 93 at 25; ECF No. 93-1 at ¶ 28.)

Because the above questions would form the basis of each class member's claims, plaintiff satisfies the commonality requirement. See Jimenez v. Allstate Ins. Co., 765 F.3d 1161, 1165-66 (9th Cir. 2014) (finding commonality satisfied when class action claims raised common question of whether the employer had practices or unofficial policies that violated California Labor Code provisions). "Even if individual members of the class will be entitled to different amounts of damages because, for instance, they were denied fewer meal and rest breaks than other employees, . . . 'the presence of individual damages cannot, by itself, defeat class certification.'" Mejia v. Walgreen Co., 2020 WL 6887749, at *4 (E.D. Cal. Nov. 24, 2020) (quoting Leyva, 716 F.3d at 513, and finding commonality satisfied where the alleged labor code violations were based on the defendant's policies).

### 4. *Typicality*

The third certification requirement, typicality, is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality test asks, "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (citation omitted). The typicality requirement is a

11

permissive standard: "[class] representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (overruled on other grounds).

Here, Plaintiff was allegedly employed by Defendants as a non-exempt employee at Defendants' facilities during the class period. (ECF No. 93-6 at 4.) The class is defined as "all current and former non-exempt employees who worked for Al Dahra in the State of California at any time during the [class period]." (Settlement Agreement at § I.D.) Plaintiff's claims are typical of the class because Plaintiff's claims "are essentially identical to all other non-exempt workers employed by Defendants, and their claims are typical of such workers with the same common issues." (ECF No. 93 at 26.) Plaintiff's claims are reasonably co-extensive of the other class members, so the typicality requirement is satisfied. Hanlon, 150 F.3d at 1020.

### 5.   *Adequacy of Representation*

To satisfy Rule 23(a)'s final requirement, the representative parties must show they will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). When analyzing the adequacy of the representation, the court must address two questions: "[1] do the named plaintiffs and their counsel have any conflicts of interest with other class members and [2] will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. Certification will be denied in instances of "actual fraud, overreaching, or collusion." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 948 (9th Cir. 2011) (emphasis omitted).

#### a.   **Conflicts of Interest**

Here, Plaintiff and the class share common injuries and generally possess the same interests. It does not appear that there is a conflict of interest between Plaintiff and the proposed class. However, the Court notes that Plaintiff possesses an individual claim, which appears to be settled in the same settlement agreement as the class settlement. (*See* Settlement Agreement at § III.C.) Plaintiff is to receive $10,000 in recognition of Plaintiff's efforts and work in prosecuting the action on behalf of the class and the PAGA class. Plaintiff is also to receive $45,375 for general release of his claim, including his individual, non-class claim. (*Id.*) This may

suggest a potential conflict of interest between Plaintiff and the class members due to his individual claim. See Madrigal v. SMG Extol, LLC, 2024 WL 40204, at *5 (N.D. Cal. Jan. 3, 2024) (finding Madrigal's incentive, during settlement negotiations, would have been to allocate as much of the $600,000 defendants appear to have been willing to pay to settle this case to himself as compensation for his individual claims); Wilson v. Conair Corp., 2016 WL 7742772, at *4 (E.D. Cal. June 3, 2016) (finding potential conflict of interest between plaintiff and the class members due to plaintiff's individual personal injury claims). Courts have found no conflict of interest where class representatives provided a release above and beyond the settlement; where plaintiff's non-class claims were distinct from those of absent class members, and there was no indication that plaintiff benefitted at the expense of the class; where individual claims were negotiated separately from the settlement; where plaintiff did not attempt to leverage the class claims to improve her individual settlement and the individual settlement is not contingent on approval of the settlement of class claims; where class members are fully informed of the existence of the settlement of the individual claims. See Kryzhanovskiy v. Amazon.com Services Inc., 2024 WL 1241721 (E.D. Cal. Mar. 22, 2024); Roberts v. Electrolux Home Products, Inc., 2014 WL 4568632, at *9 (C.D. Cal. Sept. 11, 2014); Chen v. W. Digital Corp., 2020 WL 13587954, at *5 (C.D. Cal. Apr. 3, 2020); Flores v. Dart Container Corp., 2021 WL 107239, at *5 (E.D. Cal. Jan. 12, 2021) (explaining that settlement of separate, individual claims that arose out of circumstances unique to plaintiff, through negotiations which the parties represent occurred separately from negotiations regarding the class claims, did not render plaintiff fundamentally unfit to act as a class representative).

The nature of Plaintiff's settlement of his individual claims was unclear from Plaintiff's motion. The Court held a hearing on this issue on March 28, 2025, and Plaintiff subsequently submitted a declaration. (ECF No. 102.) In the declaration, Plaintiff explains that his individual claim results from his attempt to speak with management on behalf of himself and his coworkers about a lack of rest periods and meal breaks. (Id.) It appears that Plaintiff's claim for violation of right to be free from violence or intimidation is distinct from other class members because he was the one that spoke to management and was told not to pursue the complaint. (ECF No. 102 at

¶¶ 5-6.) Plaintiff was also the one present when defendant Gombos "slammed his hand on his desk and angrily yelled bad words at [him]." (Id. at ¶ 6.) Further, Plaintiff has agreed to release more claims than other class members, including claims under the Fair Employment and Housing Act, Americans with Disabilities Act, Age Discrimination in Employment Act, and Title VII of the Civil Rights Act of 1964. (Settlement Agreement at § III.I.1.) However, the Court still has concerns that the settlement of Plaintiff's claim seems to have occurred at the same time as the class settlement and the settlement of Plaintiff's individual claim appears to be contingent on the settlement of the class claims. The Court also has no information about how the parties negotiated the settlement of Plaintiff's individual claim, i.e., did Plaintiff leverage his position over class members, did Plaintiff negotiate with the class members' best interest in mind, is plaintiff a member of the sub-class such that he will receive a higher workweek value? While it does not appear that plaintiff has a conflict of interest, before final approval the parties are ordered to provide the court with more information about the settlement process and how the negotiations occurred.

Plaintiff is also receiving a $10,000 award for his efforts and work in prosecuting the action on behalf of class members and PAGA group members. This combined with his payment for release of his individual claims is a $55,375 "incentive award." See Chen, 2020 WL 13587954, at *6. These are "fairly typical in class action cases," and are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009). Courts recognize a potential conflict of interest between a named plaintiff and the class "when, as here, there is a large difference between the enhancement award and individual class member recovery." Mansfield v. Sw. Airlines Co., 2015 WL 13651284, at *7 (S.D. Cal. Apr. 21, 2015). The existence of a common fund, as here, heightens this concern, because the enhancement award reduces the funds available for payments to class members. See Campbell v. Best Buy Stores, L.P., 2015 WL 12744268, at *4 (C.D. Cal. June 23, 2015) ("Given that the service enhancement awards would reduce the amount of the class settlement funds available for the Net Payments to

14

other Class members, a potential conflict could be present."). Recognizing these principles, at the final approval stage, the Court will "be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013). In assessing the reasonableness of incentive awards, the Court considers "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions" and "the amount of time and effort the plaintiff expended in pursuing the litigation." Staton, 327 F.3d at 977 (citation omitted). The court must balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." Id.

The Settlement Agreement proposes an incentive award up to $55,375 for the sole named plaintiff in this action, Mr. Rojas-Cifuentes, which amounts to 2.77% of the gross settlement amount of $2,000,000 and almost forty times the amount that other class members are expected to receive ($1,400). (Settlement Agreement at § III.C.1.) Percentagewise, such a class representative award is higher than has been granted in other cases. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that incentive award over 1% of settlement fund, without justification, was excessive); see also Ontiveros v. Zamora, 303 F.R.D. 356, 365 (E.D. Cal. 2014) (noting incentive awards equaling even 1% of larger settlements are generally found to be "unusually high"); Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) (citing cases demonstrating that incentive awards typically range from $2,000 to $10,000). Given that the parties have not submitted exact figures of what each class member might obtain (instead relying on a formula for the claims administrator to use in determining each class member's award), it is difficult to determine how much larger of an award this would be in comparison to what each class member might receive. This amount will be considered at the final settlement step. For purposes of provisional certification of the class, the Court does not find the proposed incentive award so disproportionate that it necessarily creates a conflict of interest or renders Plaintiff an inadequate representative.

////

1          **b.  Vigorous Prosecution**

2          As to the second aspect of the adequacy inquiry, plaintiff's attorney at Mallison &

3   Martinez has extensive experience in litigating complex class actions, including settling wage and

4   hour class actions in California. (ECF No. 93 at 26; ECF No. 93-1 at ¶¶ 4-6.) This experience

5   suggests that counsel can effectively advocate for the proposed class. In the absence of any

6   further evidence of conflicts, the Court finds Plaintiff's counsel likely to continue vigorously

7   prosecuting this lawsuit on behalf of the class.

8          **6.  *Rule 23(b)(3) Requirements***

9          Plaintiff invokes Rule 23(b)(3), which requires a finding "that the questions of law or fact

10   common to class members predominate over any questions affecting only individual members,

11   and that a class action is superior to other available methods for fairly and efficiently adjudicating

12   the controversy." Fed. R. Civ. P. 23(b)(3). The test of Rule 23(b)(3) is "far more demanding" than

13   that of Rule 23(a). Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)).

14   Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication

15   by representation." Id. at 623. Superiority tests whether the class mechanism is better than other

16   available methods, mainly by reducing litigation costs and promoting greater efficiency. Id. at

17   616-17, 620. In a class action settlement, the court need not address whether the case, if tried,

18   would present issues of manageability under Rule 23(b)(3)(D). Id. at 620.

19          Here, common questions of law and fact predominate over questions affecting individual

20   members because plaintiff alleges that he and all class members were subject to the same policies

21   and practices regarding meal and rest breaks, payment of overtime wages, provision of itemized

22   wage statements, and timely payment of wages during employment. When a class action

23   challenges a defendant's uniform policies, courts generally find the predominance requirement

24   satisfied. See Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1154-55 (9th Cir. 2016);

25   Palacios v. Penny Newman Grain, Inc., 2015 WL 4078135, at *6 (E.D. Cal. July 6, 2015) (finding

26   predominance where defendants uniformly failed to properly calculate wages and overtime,

27   provide reimbursements, account for meal and rest periods, and noting there will be individual

28   issues apart from calculating individual damages).

Because Defendants' liability would turn on a review of its uniform policies and practices, concentrating litigation of the issues in one lawsuit would be superior to individual actions. See Amchem, 521 U.S. at 620. Further, when class members' individual recoveries might be less in separate suits, the class members' individual interests generally favor certification rather than individual prosecution. Zinser v. Accufix Res. Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001); see Fed. R. Civ. P. 23(b)(3)(A) (one factor in superiority determination is class members' interests in bringing separate actions); Amchem, 521 U.S. at 617 (Rule 23(b)(3) serves to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all" (citation omitted)); see Fed. R. Civ. P. 23(b)(3)(B) (superiority determination also considers "extent and nature of any litigation concerning the controversy already begun by or against class members").[5] Thus, common questions predominate, and a class action is a superior vehicle for adjudicating the dispute.

### 7.  *Appointment of Class Representative & Class Counsel*

In sum, because the Court finds Rule 23(a)'s and Rule 23(b)(3)'s requirements are met, the class is provisionally certified for settlement purposes. Additionally, the Court provisionally appoints Plaintiff Miguel Rojas-Cifuentes as class representative. Plaintiff's interests align with those of the unnamed class members, and as discussed above, there do not appear to be any conflicts of interest sufficient to render him an inappropriate class representative.

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). When appointing class counsel, a court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action"; "(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; "(iii) counsel's knowledge of the applicable law"; and "(iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff moves for an appointment of Mallison & Martinez as Class Counsel. Plaintiff's

---

[5]  The other two factors for superiority (desirability of concentrating litigation in this forum, and difficulty of managing the class action, Fed. R. Civ. P. 23(b)(3)(C) & (D)) do not apply in the context of settlement. See Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 444-45 (E.D. Cal. 2013).

1    counsel states that they have had many discussions with plaintiff regarding the litigation, the

2    merits of the claims, and the defenses, and that plaintiff's counsel has litigated the case for nine

3    years and conducted substantial investigation and discovery. (ECF No. 93-1 at ¶¶27, 35.) This

4    implicitly supports such a motion. The Court concludes that provisional designation of the firm

5    Mallison & Martinez is appropriate. As noted above, counsel is experienced in litigating class

6    action cases, including wage and hour class actions, and appears to have advanced plaintiff's

7    position, investigated the claims thoroughly, and engaged in discovery prior to settlement. (See,

8    generally, ECF No. 93-1.) Based on their previous efforts, the Court anticipates counsel will

9    continue to devote appropriate resources to represent the class. For these reasons, the Court

10   provisionally designates plaintiff's counsel as class counsel.

11            **B. Preliminary Approval of Proposed Settlement**

12            Settlement of a class action must be "fair, reasonable, and adequate." Fed. R. Civ. P.

13   23(e)(2). Preliminary approval is appropriate when "the court will likely be able to" give final

14   approval. Fed. R. Civ. P. 23(e)(1)(B). Any fairness determination requires the court to "focus[ ]

15   primarily upon whether the particular aspects of the decree that directly lend themselves to

16   pursuit of self-interest by class counsel and certain members of the class—namely attorney's fees

17   and the distribution of any relief, particularly monetary relief, among class members—strictly

18   comport with substantive and procedural standards designed to protect the interests of class

19   members." Staton, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than

20   assessing its individual components." Lane v. Facebook, Inc., 696 F.3d 811, 818-19 (9th Cir.

21   2012). Because the parties negotiated this settlement before the broader proposed class was

22   certified, the court applies a "more probing inquiry" to ensure the fairness of the proposed

23   settlement. Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotations

24   omitted).

25            In reviewing whether the proposed settlement is fair, reasonable, and accurate, Rule 23

26   requires the court to consider whether: (1) the class representatives and class counsel have

27   adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief

28   provided for the class is adequate; and (4) the proposal treats class members equitably relative to

18

1   each other. Fed. R. Civ. P. 23(e)(2).

2        For the following reasons, the Settlement Agreement appears fair, reasonable, and

3   adequate, and so is preliminarily approved under Rule 23(e) as to the class claims.

4        **1.** *Adequacy of Representation*

5        The first factor, whether "the class representatives and class counsel have adequately

6   represented the class," Fed. R. Civ. P. 23(e)(2)(A), is redundant of Rule 23(a)(4). Mejia, 2020

7   WL 6887749, at *9 (quotation omitted). The court preliminarily finds that the class

8   representatives and class counsel adequately represent the class for purposes of Rule 23(e)(2)(A).

9        **2.** *Arm's Length Negotiation*

10       The second factor requires the court to consider whether the proposed settlement was

11  negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the proposed settlement is the

12  product of extensive investigation and discovery, including negotiations between the parties and a

13  mediation in August 2023. (ECF Nos. 93 at 10-11, 17-19, 93-1 at ¶¶ 13, 14.) Thus, the Court

14  preliminarily finds that this factor is satisfied. See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939,

15  942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to

16  a degree of deference as the private consensual decision of the parties").

17       **3.** *Adequacy of Relief Provided to the Class*

18       The adequacy of relief determination requires consideration of four sub-factors: (i) the

19  costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

20  distributing relief to the class, including the method of processing class-member claims; (iii) the

21  terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

22  agreement required to be identified under Rule 23(e)(3). See Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

23  The amount offered in the proposed settlement agreement is generally the most important

24  consideration of any class settlement. See Bayat v. Bank of the West, 2015 WL 1744342, at *4

25  (N.D. Cal. Apr. 15, 2015) (citing In re HP Inkjet Printer Litig., 716 F.3d 1173, 1178-79 (9th Cir.

26  2013)).

27       In determining whether the amount offered is fair and reasonable, courts compare the

28  proposed settlement to the best possible outcome for the class. See Rodriguez, 563 F.3d at 964.

Here, the parties agreed to settle this case for a non-reversionary sum of $2,000,000, inclusive of the PAGA payments. (Settlement Agreement at § I.Q.) After deductions for an incentive award, attorneys' fees, litigation costs, settlement administrator fees, and the PAGA payment to the LWDA (assuming full approval for all), the Court calculates a Net Settlement Fund of $1,141,958. (ECF No. 93 at 12-13.) The proposed settlement roughly results in an average recovery of $1,400 per class member, although it will vary depending on the number of workweeks each class member actually worked, as each class member's award will be calculated as a proportional share of the net settlement amount. See id. The proposed settlement appears fair, reasonable, and adequate given the parties' understanding of the strength and weaknesses of their positions after engaging in significant negotiations, discovery and investigation. (See ECF No. 93-1 at ¶¶27-36.) However, in order to fully evaluate the reasonableness of the parties' understanding in this respect, the Court will direct parties to include further explanation in their Final Approval motion as to the potential maximum relief in this action if damages and full penalties were to be found cognizable for purposes of assessing whether the settlement amount results in a recovery that is in range of settlements that been approved by California courts.

Under the Settlement Agreement, class members will not have to submit claims to receive payment; instead, they will be identified through defendant's employment records; the Settlement Administrator will search for class members' most recent address through searches; and class members will receive the settlement payment by mail unless they opt out of the settlement. (Settlement Agreement at §§ I.C., III.F.2.e & f; see id. § III.F.3.) Each class member's share will be calculated based on how many workweeks they worked during the class period, which can be readily determined by defendant's employment records, and which will be stated on the Class Notice; class members will also have an opportunity to challenge errors relating to the number of workweeks calculated on the Notice. (Id. at § III.E.1, 2; ECF No. 93-3 at 3-4.) This method of distributing relief is "simple and effective." Loreto v. Gen. Dynamics Info. Tech., Inc., 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021).

The Settlement Agreement also provides that class counsel will request attorney's fees up to 33.3% percent of the gross settlement amount, at $666,667 and litigation expenses not to

1    exceed $50,000. (Settlement Agreement at § III.C.2; ECF No. 93 at 11-12.) In settlements that

2    produce a common fund, courts may use either the lodestar method or percentage-of-recovery

3    method to determine the reasonableness of attorney's fees. In re Bluetooth, 654 F.3d at 942.

4    Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for

5    a reasonable fee award." Id. However, a departure may be justified based on "special

6    circumstances." Id.

7        Given that class counsel eventually will move separately for attorney's fees and costs

8    under Rule 23(h), the Court need not determine at the preliminary approval stage whether a

9    33.3% award is reasonable. For now, counsel's anticipated request is not so disproportionate to

10   the relief provided to the class that it "calls into question the fairness of the proposed settlement."

11   Pokorny v. Quixtar Inc., 2011 WL 2912864, at *1-2 (N.D. Cal. July 20, 2011).

12       In the forthcoming Rule 23(h) motion, class counsel will be expected to fully substantiate

13   the justification for an attorney's fees award—especially a request exceeding the 25% benchmark.

14   See In re Bluetooth, 654 F.3d at 942 (stating that district courts should "award only that amount

15   of fees that is reasonable in relation to the results obtained" (citation omitted)). Counsel shall

16   address factors such as "(1) whether the results achieved were exceptional; (2) risks of litigation;

17   (3) non-monetary benefits conferred by the litigation; (4) customary fees for similar cases; (5) the

18   contingent nature of the fee and financial burden carried by counsel; and (6) the lawyer's

19   reasonable expectations, which are based on the circumstances of the case and the range of fee

20   awards out of common funds of comparable size." Mejia, 2020 WL 6887749, at *10 (quotation

21   omitted). Counsel shall brief the fee application using the lodestar method as a cross-check,

22   which will assist the court in confirming the reasonableness of the requested fees. For this cross

23   check, counsel shall note the differences in the prevailing rates between the Eastern District of

24   California and other districts when submitting their motion.

25       Lastly, Plaintiff identifies no other agreements made in connection with the proposed

26   settlement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). This weighs in favor of approving the

27   settlement.

28   ////

1          **4.  *Equitable Treatment of Class Members***

2          The fourth factor addresses whether the proposed settlement agreement "treats class

3   members equitably relative to each other." See Fed. R. Civ. P. 23(e)(2)(D). This inquiry considers

4   both (i) equity across sub-categories, or segments, of the class, and (ii) equity between class

5   representatives and unnamed class members.

6          The Settlement Agreement provides that class workweeks worked by the Wilmington

7   Auto-Deduct Sub-Class members will be given two settlement points and the class workweeks

8   worked by all other class members will be given one settlement point. (Settlement Agreement at

9   § III.E.1.) Each class member will receive at least the amount equivalent to one settlement point

10  and each Wilmington Auto-Deduct Sub-Class Member will receive at minimum the amount

11  equivalent to two settlement points. (Id.) The parties have not explained why the Wilmington

12  Auto-Deduct Sub-Class will receive more points than the class members. Upon final approval, the

13  parties are directed to include additional information about why workweeks worked by the

14  Wilmington Auto-Deduct Sub-Class members are given two settlement points and the workweek

15  worked by the class member are given one settlement point. (Settlement Agreement at § III.E.1.)

16  As to equitable treatment between the class representative and the class members, the Court

17  incorporates its discussion regarding the incentive award. Given that the Court retains discretion

18  to award a lower amount depending on the briefing provided at the final approval stage, this is not

19  a source of impermissible inequity.

20         **C.  Settlement of PAGA Penalties Claim**

21         Plaintiff's eighth cause of action in his SAC asserts a claim for PAGA penalties, on behalf

22  of Plaintiff and all aggrieved employees, for civil penalties associated with the Labor Code

23  violations asserted in the class claims. (ECF No. ECF No. 49 at ¶¶ 83-94.) As discussed at the

24  outset, PAGA claims and their settlement are fundamentally distinct from Rule 23 class claims.

25  See Hamilton, 39 F.4th at 583 ("Rule 23 class actions and PAGA actions are so conceptually

26  distinct that class action precepts generally have little salience for PAGA actions."); Canela, 971

27  F.3d at 852 (noting "the different remedial schemes that exist in Rule 23 class actions and PAGA

28  suits").

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code § 2699(a). "Plaintiffs may bring a PAGA claim only as the state's designated proxy, suing on behalf of all affected employees." Kim, 9 Cal. 5th at 87. Because a PAGA plaintiff serves "as the proxy or agent of the state's labor law enforcement agencies," "a judgment in th[e] action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." Arias v. Superior Ct., 46 Cal. 4th 969, 986 (2009). "Unlike a class action, there is no mechanism for opting out of a judgment entered on a PAGA claim." Amaro v. Anaheim Arena Mgmt., LLC, 69 Cal. App. 5th 521, 541 n.5 (2021) (internal quotes omitted). Thus, a PAGA plaintiff owes a duty both to their "fellow aggrieved workers," who will be inalterably bound by the judgment on the PAGA claim, and to the public at large because "they act, as the statute's name suggests, as a private attorney general." O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133-34 (N.D. Cal. 2016).

Under PAGA's remedial scheme, civil penalties recovered are distributed between "the aggrieved employees" (25%) and the LWDA (75%). Former Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be approved by the court; and the proposed settlement must also be sent to the LWDA at the same time it is submitted to the court.[6] Cal. Lab. Code § 2699(2)(2).

Although the court does not evaluate the settlement of PAGA claims under the Rule 23 criteria, it must still inquire into the fairness of the PAGA settlement. "[I]n reviewing a settlement that includes both a Rule 23 class and a PAGA claim, the court must closely examine both aspects of the settlement." O'Connor, 201 F. Supp. 3d at 1133 (emphasis omitted). Based on the best guidance at hand—from the LWDA's input in O'Connor, in the absence of a definitive governing standard—district courts typically apply "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "fundamentally fair, reasonable, and adequate." Haralson, 383 F. Supp. 3d at 971-72; see Mondrian v. Trius Trucking, Inc., 2022 WL 2306963, at *7 (E.D. Cal. une 27, 2022) (noting lack of binding standard for approving PAGA settlements and adopting

---

[6] Plaintiff provided the LWDA a copy of the settlement agreement on March 29, 2024. (ECF No. 93-4.)

1    "fundamentally fair, reasonable, and adequate" standard based on LWDA's O'Connor

2    commentary).

3            "While a proposed settlement must be viewed as a whole, the [c]ourt must evaluate the

4    adequacy of compensation to the class as well as the adequacy of the settlement in view of the

5    purposes and policies of PAGA. In doing so, the court may apply a sliding scale." O'Connor, 201

6    F. Supp. 3d at 1134 (citation and emphasis omitted). "For example, if the settlement for the Rule

7    23 class is robust, the purposes of PAGA may be concurrently fulfilled." Id. Non-monetary relief

8    provided through the settlement may also satisfy PAGA's interests in enforcement and

9    deterrence. Id. at 1134-35. Conversely, in cases where a settlement provides "relatively modest"

10   amounts in settlement of the class claims compared to their verdict value, and there is no non-

11   monetary relief provided, the PAGA aspect of the settlement must stand on its own to

12   "substantially vindicate" PAGA's policy interests. Id. at 1135.

13           The Settlement Agreement provides for $100,000 in PAGA penalties out of the gross

14   settlement amount of $2,000,000. (Settlement Agreement at § III.C.4.) Class counsel anticipated

15   that any award under the PAGA would likely be reduced, the Court could exercise its discretion

16   and decline to "stack" penalties for multiple violations within a single pay period, or some of the

17   unpaid time underlying plaintiff's FLSA claims may have been considered de minimis. (ECF No.

18   93-1 at ¶ 32; ECF No. 93 at 23.) While the Court would not describe the potential individual

19   payments to class members as "robust," the Court is persuaded that PAGA's interests are satisfied

20   given the difficulties Plaintiff would have in litigating this case through trial and given the

21   parties' negotiation efforts after significant discovery and investigation. O'Connor, 201 F. Supp.

22   3d at 1134.

23           Considering the other factors from Rule 23(e)(2), the Court finds the PAGA portion of the

24   settlement to be similarly fair and adequate for the PAGA members. Though the PAGA payment

25   will be much lower than the Rule 23 payments, this will ultimately benefit the class members, as

26   PAGA's 75%/25% allocation would only shift funds away from the class members—who appear

27   to be the same set of individuals as the PAGA members. See Rodriguez v. Danell Custom

28   Harvesting, LLC, 293 F. Supp. 3d 1117, 1133 (E.D. Cal. 2018) (approving 0.6% PAGA payment

because LWDA did not object to terms of settlement). Plaintiff provided the LWDA a copy of the settlement agreement on March 29, 2024. (ECF No. 93-4.) There is no evidence that the LWDA commented on the settlement. The Court also takes the LWDA's decision to not comment on the settlement after being notified thereof as implicit approval of the parties' agreement. See Mancini v. W. & S. Life Ins. Co., 2018 WL 4489590, at *2 (S.D. Cal. Sept. 18 2018) (taking LWDA's "acquiescence as indication that the settlement is presumptively reasonable"). Finally, the parties have accounted for the distinction between Rule 23 opt outs and PAGA's inability to do so, as the settlement agreement and notice inform as much. Uribe v. Crown Bldg. Maint. Co., 70 Cal. App. 5th 986, 1001 (2021), as modified on denial of reh'g (Oct. 26, 2021) (stating that PAGA actions do not afford the same opt out feature as class actions); Amaro, 69 Cal. App. 5th at 541 n.5 ("Unlike a class action, there is no mechanism for opting out of [a] judgment entered on [a] PAGA claim." (alteration in original) (citation omitted)).

   For these reasons, the Court finds the settlement of the PAGA Penalties claim to be fundamentally fair, reasonable, and adequate." See Haralson, 383 F. Supp. 3d at 972.

### D. Settlement Administrator; Notice to Class/PAGA Members; Fairness Hearing

#### 1. *Settlement Administrator*

   To ultimately approve a class action settlement, a district court must ensure class members were notified of the proceedings, had the opportunity to opt out or (for those who remain in the settlement) object to any of the settlement's terms, and were provided the chance to appear at fairness hearing. Fed. R. Civ. P. 23(e)(1)-(5). To effectuate these procedures, the parties have agreed to retain CPT Group, Inc. to handle the notice and settlement administration process. (ECF No. 93 at 12; Settlement Agreement at § I.KK.) The Court approves.

#### 2. *Notice to Class Members*

   For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); see Hanlon, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For settlements under Rule 23(b)(3), the court is required to:

   [D]irect to class members the best notice that is practicable under the

> circumstances, including individual notice to all members who can
> be identified through reasonable effort [by] United States mail,
> electronic means, or other appropriate means, [concerning] the
> nature of the action; the definition of the class certified; the class
> claims, issues, or defenses; that a class member may enter an
> appearance through an attorney if the member so desires; that the
> court will exclude from the class any member who requests
> exclusion; the time and manner for requesting exclusion; and the
> binding effect of a class judgment on members . . . .

Fed. R. Civ. P. 23(b)(3); see also Fed. R. Civ. P. 23(e)(4) and (5) (requiring the court provide

class members with an opportunity to be excluded from the settlement or object to the terms). A

class action settlement notice "is satisfactory if it generally describes the terms of the settlement

in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and

be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (internal

quotations and citations omitted).

Here, the Class Notice generally describes the terms of the settlement and provides a link

to a forthcoming website that will contain documents from the Court's docket. The form allots

space to notify each class member of how many workweeks they worked and what their estimated

total award will be—properly distinguishing between the Rule 23 and PAGA workweeks. The

Class Notice also provides the class members with the amounts they will be awarded for each

segment of the settlement, properly distinguishing between the Rule 23 award and the PAGA

award. (ECF No. 93-3.) However, as it is currently written, the Class Notice does not adequately

inform the class members that the Class Representative is requesting additional funds, and should

be modified accordingly.  Further, the Class Notice has a sentence that reads: The Class Notice

must also finish the sentence that currently reads: "The Class Representative also alleges

violations of the." (Id.)  The parties are ordered to include this information in the Class Notice

before sending it to class members. The Class Notice also states that the final approval hearing

will be before District Judge Dale A. Drozd. The parties shall update this information before

mailing the Class Notice as the final approval hearing will be before Magistrate Judge Carolyn K.

Delaney.

The Settlement Agreement requires the Settlement Administrator to mail out notices of

26

the class action settlement ten days after receiving the list of class members, which will be provided fifteen days after the Court's preliminary approval. (Settlement Agreement at ¶ III.F.3.e, g.) It then allows thirty days from the mailing of the proposed Notice Packet for class members to (a) opt out of the settlement, (b) object to the terms of the settlement, or (c) dispute their dates of employment and estimated recovery amount listed on the Notice. (Id. at § III.F.2.c, d, h.) The Class Notice states that if a class member opts out, they will not receive a payment and they will not be bound by the class release. (ECF No. 93-3 at 6.) The Settlement Agreement contains a procedure for distribution of the PAGA payment and the Class Notice informs the potential class member that there is no opt-out option in the PAGA settlement. (Id.; Settlement Agreement at § III.F.2.c.) Finally, a space notifying the class members of the date and time of the Court's Fairness Hearing is properly provided. (ECF No. 93-3 at 6.) Plaintiff is instructed to clarify that plaintiff is receiving additional compensation for the release of his claims in the Class Notice. With that addition, the Court approves of the Class Notice and schedule noted therein. According, the notice meets the requirements of Rule 23(b)(3) and 23(e)(4) and (5), as well as relevant case law. Churchill Vill., 561 F.3d at 575.

### 3. *Further Scheduling and the Fairness Hearing*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." In re Bluetooth, 654 F.3d at 946 (citation omitted). To protect the rights of absent class members, Rule 23(e) requires the court approve such settlements "only after a fairness hearing . . . ." Id.; Fed. R. Civ. P. 23(e)(2).

For clarity, the Court now reiterates the remaining deadlines as per in the Settlement Agreement, the Class Notice, and the parties' proposed order. (See Settlement Agreement; ECF No. 93-3; ECF No. 93-7.)

| | |
|---|---|
| Deadline for Defendant to provide the Settlement Administrator a list of the names, most recent known mailing address and telephone number, Social Security Number and respective number of workweeks that each Class Member worked during the Settlement Class Period in a readable Microsoft Office Excel Spreadsheet ("Class List and Data") | **April 14, 2025** |
| Deadline for mailing of Class Notices by Settlement Administrator. | ***10 days after Settlement Administrator's receipt of Class List and Data*** |
| Last day for Class Members to submit a written request for exclusion, submit objections, or dispute the workweeks calculated. | ***Within 30 days after the mailing (or remailing) of the Class Notice*** |
| Last day for Class Counsel to file with the Court and serve declaration by Settlement Administrator specifying the due diligence undertaken with regard to the mailing of the Notice | **July 23, 2025** |
| Last day for Plaintiff to request final approval of the settlement agreement, attorneys' fees, and incentive award. | **July 23, 2025** |
| Fairness Hearing Date (Courtroom 24). | ***September 10, 2025 at 10:00 a.m.*** |

## <u>ORDER</u>

For the above reasons, it is HEREBY ORDERED that:

1.      Plaintiff's unopposed motion for conditional class certification and preliminary approval of settlement (ECF No. 93) is GRANTED;

2.      As defined above and for purposes of settlement only, the Rule 23 class is provisionally certified, Plaintiff Miguel Rojas-Cifuentes is appointed class representative, and Mallison & Martinez is appointed class counsel;

3.     The Settlement Agreement (ECF No. 98) is preliminarily approved as fair, reasonable, and adequate;

4.     CPT Group is appointed Settlement Administrator for this class action settlement;

5.     The parties' plan for notice to the class is the best notice practicable and satisfies the due process concerns of Rule 23, but the parties shall revise the Class Notice before sending it to class members as follows:

a.     The Class Notice shall inform the class members that the Class Representative is requesting a reasonable service payment;

b.     The sentence that currently reads: "The Class Representative also alleges violations of the" (ECF No. 93-3) shall be modified to reflect the Class Representative's allegations;

c.     The Class Notice shall reflect that the fairness hearing will be conducted by the undersigned.

6.     Plaintiff's request to file a third amended complaint (Settlement Agreement at § III.K; ECF No. 93 at 27 n.4; *see* ECF No. 93-6) is GRANTED; and

7.     The parties shall follow the deadlines set herein as delineated by the Settlement Agreement.  A fairness hearing is scheduled for **September 10, 2025, at 10:00 a.m.**, in Courtroom 24 of the Matsui Courthouse, 501 I. St., Sacramento, CA, 95814.

Dated:  March 31, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

5, roja.0697.14

29