UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ROJAS-CIFUENTES,<br><br>Plaintiff,<br><br>v.<br><br>ACX PACIFIC NORTHWEST INC., et al.,<br><br>Defendants. | No.  2:14-cv-00697-CKD<br><br>ORDER GRANTING FINAL APPROVAL OF <u>CLASS ACTION SETTLEMENT</u><br><br>(ECF No. 107) |

This matter came before the Court on September 10, 2025, for a hearing on the unopposed motion for final approval of a class action settlement filed on behalf of plaintiff Miguel Rojas-Cifuentes. (ECF No. 107.) Following the consent of all parties, this case was reassigned to the Magistrate Judge for all purposes. (ECF No. 96, 97, 99.) Plaintiff Miguel Rojas-Cifuentes brings this putative class action against Defendants Al Dahra ACX Global, Inc. (formerly ACX Pacific Northwest Inc.) ("Al Dahra"); Pacific Leasing, LLC; John M. Gambos; and John E. Gambos alleging class violations of the Fair Labor Standards Act ("FLSA"), California Labor Code, and California's Unfair Competition Law. (ECF No. 104 at ¶¶ 28-82.) Plaintiff also brings an individual claim against Al Dahra, Pacific Leasing, and John E. Gombos for violation of California Civil Code section 51.7, and a claim under the California Labor Code Private Attorney General Act ("PAGA"). (Id. at ¶¶83-101.) Attorney Cody Bolce appeared by video on behalf of plaintiff and the putative class. Attorney Jason Campbell appeared on behalf of defendant. For the

reasons discussed below, the Court GRANTS Plaintiff's motion for final approval of class action settlement.

### I.    BACKGROUND

The Court previously summarized plaintiff's allegations in its March 31, 2025, order granting plaintiff's motion for preliminary approval of class action settlement. (ECF No. 103.) The Court will not repeat that factual background in this order. On July 3, 2025, plaintiff filed a third amended complaint ("TAC"). (ECF No. 104.)

On July 23, 2025, plaintiff filed the pending unopposed motion for final approval of the parties' class action settlement. (ECF No. 107.) As of the date of the hearing on September 10, 2025, no objections to the settlement had been received or filed with the Court, and no class members had opted out of the settlement. (Id. at 8; ECF No. 107-3 at ¶ 9.) During the hearing, the Court requested plaintiff file a supplemental declaration regarding attorney's fees. (See ECF No. 110.) Plaintiff field this declaration on September 12, 2025. (ECF No. 111.)

The settlement agreement provides for a settlement payment made by defendant in the amount of $2,000,000. (ECF No. 103 at 4-5; Settlement Agreement § III.C (ECF No. 98).) Assuming the parties' proposed allocations are awarded in full, approximately $1,113,458 will be available for distribution to the participating class members. (ECF No. 107-3 at ¶¶ 11-12; see ECF No. 103 at 5; Settlement Agreement § III.C.)

### II.    FINAL CERTIFICATION OF SETTLEMENT CLASS

On March 31, 2025, the Court granted plaintiff's motion for class certification. (ECF No. 103.) On July 3, 2025, pursuant to the parties' agreement and the Court's order, plaintiff filed a TAC. (ECF No. 104; see ECF No. 103 at 2, 29.) The Court also appointed plaintiff Miguel Rojas-Cifuentes as class representative (ECF No. 103 at 17); the firm Mallison & Martinez as class counsel (id. at 17-18); and CPT Group, Inc. as settlement administrator (id. at 25).

Because no additional substantive issues concerning the certification have been raised, the Court does not repeat its prior analysis here, and the Court's prior appointments are confirmed for settlement purposes.

/////

2

1    **III.   FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

2         Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P.

3   23(e). To approve a settlement, a district court must: (i) ensure notice is sent to all class members;

4   (ii) hold a hearing and make a finding that the settlement is fair, reasonable, and adequate;

5   (iii) confirm that the parties seeking approval file a statement identifying the settlement

6   agreement; and (iv) be shown that class members were given an opportunity to object. Fed. R.

7   Civ. P. 23(e)(1)-(5). The settlement agreement in this action was previously filed on the court's

8   docket (see ECF No. 93-2 (Settlement Agreement)), and class members have been given an

9   opportunity to object. The Court now turns to the adequacy of notice and its review of the

10   settlement following the final fairness hearing.

11       **A.   Notice**

12         Adequate notice of the class settlement must be provided under Rule 23(e). Hanlon v.

13   Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998); see also Silber v. Mabon, 18 F.3d 1449,

14   1453-54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual

15   notice, only that "best practicable notice" is given); Winans v. Emeritus Corp., 2016 WL 107574,

16   at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach

17   all class members, it does not require that each individual actually receive notice."). "Notice is

18   satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those

19   with adverse viewpoints to investigate and to come forward and be heard.'" Churchill Vill.,

20   L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist.

21   No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should

22   alert class members of "the opportunity to opt-out and individually pursue any state law remedies

23   that might provide a better opportunity for recovery." Hanlon, 150 F.3d at 1025.

24         The Court previously reviewed the notice provided in this case at the preliminary approval

25   stage and found it to be satisfactory. (ECF No. 103 at 25-27.) Following grant of preliminary

26   approval, the Settlement Administrator received the text for the content of the Class Notice from

27   Class Counsel and prepared a draft of the Class Notice for mailing. (ECF No. 107-3 at ¶ 3.) The

28   Settlement Administrator received a date file from defense counsel containing the information

needed for mailing for 730 class members. (Id. ¶ 4.) The Settlement Administrator conducted a

search through the national Change of Address database maintained by the United States Postal

Service. (Id. ¶ 5.) Eighty-one class notices were returned, none of which provided a new address.

(Id. ¶ 7.) For the notices that were returned, the Settlement Administrator performed a skip trace

to locate a better address using Accurint, an address database. (Id.) As a result of the skip trace,

re-mail requests from counsel or the class members, a total of fifty-one class notices were re-

mailed by the Settlement Administrator, one class notice was forwarded, and there were thirty-

five undeliverable class notices. (Id. ¶ 8.) As of the date of the declaration, the Settlement

Administrator had received no requests for exclusion, no notices of objection, and no workweek

disputes. (Id. ¶ 9.)

Given the above, the court accepts the reports of the Settlement Administrator and finds

adequate notice has been provided, thereby satisfying Federal Rule of Civil Procedure 23(e)(1).

Silber, 18 F.3d at 1453-54; Winans, 2016 WL 107574, at *3.

**B.      Final Fairness Determination**

On September 10, 2025, the Court held a final fairness hearing, at which class counsel and

defense counsel appeared by video. The Court now must determine whether the settlement is fair,

adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). At the final approval stage, the primary

inquiry is whether the proposed settlement is fundamentally "fair, reasonable, and adequate."

Lane v. Facebook, Inc., 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e));

Hanlon, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual

component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citing

Officers for Justice v. Civil Serv. Comm'n of S.F., 688 F.2d 615, 628 (9th Cir. 1982)); see also

Lane, 696 F.3d at 818-19. Having already completed a preliminary examination of the agreement,

the court reviews it again, mindful that the law favors the compromise and settlement of class

action suits. See, e.g., In re Syncor ERISA Litig., 516 F.3d 1095, 1101 (9th Cir. 2008); Churchill

Vill., 361 F.3d at 576; Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992);

Officers for Justice, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is

committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants,

1  and their strategies, positions and proof." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003)

2  (quoting Hanlon, 150 F.3d at 1026).

3        In assessing the fairness of a class action settlement, courts balance the following factors:

4  (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of

5  further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

6  amount offered in settlement; (5) the extent of discovery completed and the stage of the

7  proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

8  participant; and (8) the reaction of the class members to the proposed settlement.

9  Churchill Vill., 361 F.3d at 575; see also In re Online DVD-Rental Antitrust Litig., 779 F.3d 934,

10  944 (9th Cir. 2015).

11        These settlement factors are non-exclusive, and each need not be discussed if they are

12  irrelevant to a particular case. Churchill Vill., 361 F.3d at 576 n.7.

13        However, the Ninth Circuit has found that consideration of the Churchill factors alone is

14  not sufficient to survive appellate review. See Briseño v. Henderson, 998 F.3d 1014, 1022-26 (9th

15  Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our

16  precedent" and mandates consideration of "the Bluetooth factors" to all class action settlements,

17  regardless of whether settlement was achieved before or after class certification); see also Fed. R.

18  Civ. P. 23(e)(2)(C)-(D). Under the revised Rule 23(e), "district courts must apply the Bluetooth

19  factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members

20  being shortchanged." Briseño, 998 F.3d at 1026. The Bluetooth factors—also referred to as

21  "subtle signs" of collusion—include: (i) "when counsel receive a disproportionate distribution of

22  the settlement, or when the class receives no monetary distribution but class counsel are amply

23  rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of

24  attorneys' fees separate and apart from class funds," or a provision under which defendant agrees

25  not to object to the attorneys' fees sought; and (iii) "when the parties arrange for fees not awarded

26  to revert to defendants rather than be added to the class fund." In re Bluetooth Headset Prods.

27  Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted); Kim v.

28  Allison, 8 F.4th 1170, 1180 (9th Cir. 2021). "The presence of these three signs is not a death

1    knell—but when they exist, 'they require[] the district court to examine them, . . . develop the

2    record to support its final approval decision,' and thereby 'assure itself that the fees awarded in

3    the agreement were not unreasonably high.'" <u>Kim v. Allison</u>, 8 F.4th 1170, 1180 (9th Cir. 2021)

4    (quoting <u>Allen v. Bedolla</u>, 787 F.3d 1218, 1224 (9th Cir. 2015)) (alterations in original). Thus,

5    while this court has wide latitude in determining whether a settlement is substantively fair, it is

6    held to a higher procedural standard, and in order "[t]o survive appellate review [it] must show it

7    has explored comprehensively all factors, and must give a reasoned response to all non-frivolous

8    objections." <u>McKinney-Drobnis v. Oreshack</u>, 16 F.4th 594, 606 (9th Cir. 2021) (quoting <u>Allen</u>,

9    787 F.3d at 1223-24).

10                    **1.    Strength of Plaintiff's Case**

11           When assessing the strength of a plaintiff's case, the court does not reach "any ultimate

12   conclusions regarding the contested issues of fact and law that underlie the merits of th[e]

13   litigation." <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 720 F. Supp. 1379, 1388 (D. Ariz.

14   1989). The court cannot reach such a conclusion because evidence has not been fully presented.

15   <u>Id.</u> Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the

16   litigation and the impact of those considerations on the parties' decisions to reach these

17   agreements." <u>Id.</u>

18           Plaintiff states that although he believes strongly in the underlying merits of the case, he

19   acknowledges wage and hour cases can be difficult to prove on a class basis. (ECF No. 107 at

20   13.) Further, plaintiff acknowledged clear uncertainties surrounding his ability to prove his claims

21   given the unpredictability of a lengthy and complex jury trial. (<u>Id.</u>) Plaintiff's counsel states that

22   the analysis of Defendants' time and pay records showed regular meal period violations, but

23   recognizes that plaintiff's meal break claim might not readily support awards of wage statement

24   and waiting time violation. (ECF No. 107-1 at ¶ 29.) Plaintiff's counsel acknowledges that

25   plaintiff faced legal obstacles in obtaining other damages and penalties even if plaintiff stood to

26   prevail on wage and break violation claims. (<u>Id.</u> ¶ 32.) Additionally, plaintiff's counsel states that

27   defendants contest liability in this action, are represented by zealous counsel, and are prepared to

28   vigorously defend against the claims if the action is not settled. (<u>Id.</u> ¶ 34.) If the case proceeds,

                                                        6

1   plaintiff's counsel acknowledges plaintiff would face significant risks, including at trial, that the

2   issues could be resolved in defendants' favor. (Id.)

3       Accordingly, the Court finds that consideration of this factor weighs in favor of granting

4   final approval of the parties' settlement in this action.

**2.      Risk, Expense, Complexity, and Likely Duration of Further**

**Litigation**

7       When considering whether the relief for the class is "adequate," the court must take into

8   account "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). "[T]here is

9   a strong judicial policy that favors settlements, particularly where complex class action litigation

10  is concerned." In re Syncor ERISA Litig., 516 F.3d at 1101. As a result, "[a]pproval of settlement

11  is 'preferable to lengthy and expensive litigation with uncertain results.'" Johnson v. Shaffer,

12  2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing Morales v. Stevco, Inc., 2011 WL

13  5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

14      Plaintiff asserts that there are significant risks in continued litigation, including

15  bankruptcy on part of the defendants, the risk plaintiff would not prevail on the meris, and further

16  appeals which could delay resolution of the case for years. (ECF No. 107 at 14.)

17      Plaintiff asserts that a certain payout under the settlement agreement is a better option than

18  continuing litigation. (ECF No. 107 at 14; see ECF No. 107-1 at ¶¶ 29, 32-34.) Because the

19  information before the Court suggests that there would be risk and expense in seeking to prove

20  plaintiff's case at trial, consideration of this factor also weighs in favor of granting final approval.

**3.      Risk of Maintaining Class Action Status Throughout Trial**

22      Plaintiff states that although plaintiff and his counsel are confident in their abilities to

23  prosecute and manage this case, there was a significant risk of a decertification motion or

24  subsequent manageability issues at trial. (ECF No. 107 at 14.) Thus, consideration of this factor

25  also weighs in favor of granting final approval.

**4.      Amount Offered in Settlement**

27      To evaluate the fairness of the settlement award, the court should "compare the terms of

28  the compromise with the likely rewards of litigation." Protective Comm. for Indep. Stockholders

7

1  of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968); see also Fed. R. Civ. P

2  23(e)(2)(C)-(D). "It is well-settled law that a cash settlement amounting to only a fraction of the

3  potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin.

4  Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls

5  within the range of possible approval" a court must focus on "substantive fairness and adequacy,"

6  and "consider plaintiff['s] expected recovery balanced against the value of the settlement offer."

7  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078-80 (N.D. Cal. 2007) (citations omitted). In

8  addition, the court must consider whether "the proposal treats class members equitably relative to

9  each other" and whether "the relief provided for the class is adequate." Fed. R. Civ. P.

10  23(e)(2)(C)-(D).

11    Here, the parties have agreed to a $2,000,000 gross settlement, allocated as follows: (1) up

12  to $666,667 for attorney's fees and $50,000 in litigation costs expenses; (2) $55,375 class

13  representative service award for plaintiff; (3) $14,500 for the settlement administration costs; and

14  (4) $100,000 in civil penalties under the PAGA, with $75,000 paid to the California Labor and

15  Workforce Development Agency ("LWDA"); and (5) the remainder of the funds being allocated

16  to the net settlement fund. (Settlement Agreement §§ I.Q, III.C; ECF Nos. 107 at 10, 107-1 at

17  ¶¶ 20-21.) This leaves a net settlement amount of $1,113,458 will be available for distribution to

18  the participating class members. (ECF No. 107-3 at ¶¶ 11-12.)

19    The net settlement amount will be disbursed to the class members on a pro rata basis

20  based on the number of class workweeks attributed to a class member during the class period.

21  (Settlement Agreement § III.E.) Based on plaintiff's current estimates of the net settlement funds,

22  the average gross amount class members are expected to recover is $1,525.29, with the largest

23  payment to any class member estimated to be $17,699.71. (ECF No. 107-3 at ¶ 12.) The

24  settlement agreement provides for a non-reversionary settlement, and any uncashed checks will

25  be distributed to the Legal Aid at Work, subject to Court approval. (Settlement Agreement

26  § III.F.5.)

27    Plaintiff calculated the total damages to be approximately $3,200,003.97, including

28  damages for meal period violations totaling $1,349,801.64 in unpaid premium wages, derivative

penalties recoverable under the Labor Code for failure to timely pay wages upon termination totaling $703,654.53 and failure to issue accurate wage statements totaling $553,800, and unpaid time worked off the clock totaling $593,747.80. (ECF No. 107-1 at ¶ 31.) Plaintiff acknowledged legal obstacles in obtaining other damages and derivative penalties, including the possibility that the Court would decline to enter a finding of willfulness, or that some PAGA penalties could be reduced. (Id. ¶¶ 32-33.) Further defendants contest liability in this case, are represented by zealous counsel, and are prepared to defend against the claims if the action did not settle. (Id. ¶ 34.)

Based on this, the Court finds that the amount offered in settlement is reasonable.

### a.    PAGA Penalties Amount Offered in Settlement

The settlement also provides for $100,000 in civil PAGA penalties. (Settlement Agreement § III.C.4.) This is based on 75%, or $75,000, being allocated to the LWDA and 25%, or $25,000, being allocated to the aggrieved employees. Accordingly, $75,000 will be allocated to the LWDA and $25,000 will be included in the net settlement amount.

Although there is no binding authority setting forth the proper standard of review for PAGA settlements, California district courts "have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is 'fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes.'" Haralson v. U.S. Aviation Servs. Corp., 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019). This standard is derived from the LWDA. In commenting on a proposed settlement including both class action and PAGA claims, the LWDA has offered the following guidance:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's guidance with approval). Recognizing the distinct issues presented by class actions, this

Court is persuaded by the LWDA's reasoning in O'Connor and therefore adopts its proposed standard in evaluating the PAGA portion of the settlement now before the Court. See id.; see, e.g., Castro v. Paragon Indus., Inc., 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020); Patel v. Nike Retail Servs., Inc., 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).

The proposed $100,000 penalty payment in this case represents 5% of the gross settlement amount. The Court previously approved the payment, noting that class counsel anticipated that any award under the PAGA would likely be reduced, the Court could exercise its discretion and decline to "stack" penalties for multiple violations within a single pay period, or some of the unpaid time underlying plaintiff's FLSA claims may have been considered de minimis. (ECF No. 103 at 23-25.) The Court noted that the potential individual payments to class members was not "robust" the Court was persuaded that PAGA's interests were satisfied given the difficulties plaintiff would have litigating this case through trial and given the parties' negotiation efforts after significant discovery and investigation. (Id. at 24.) Plaintiff also noted that the LWDA did not comment on the settlement after being notified thereof. (See id. at 25; ECF No. 107-1 at ¶ 35, ECF No. 107-4.)

Having reviewed the parties' submission and the terms of the proposed settlement, the Court finds that the settlement amount related to plaintiffs' PAGA claims is fair, reasonable, and adequate in light of PAGA's public policy goals.

Thus, the Court finds that the amount offered in settlement of the PAGA claims here weighs in favor of granting final approval of the settlement.

**5.    Extent of Discovery Completed and Stage of the Proceedings**

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting In re Chicken Antitrust Litig., 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class action settlement thus "is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 454 (E.D. Cal. 2013). A settlement is presumed fair if it "follow[s] sufficient discovery and

10

1    genuine arms-length negotiation." <u>Adoma v. Univ. of Phx., Inc.</u>, 913 F. Supp. 2d 964, 977 (E.D.

2    Cal. 2012) (quoting <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 528 (C.D.

3    Cal. 2004)). The court must consider whether the process by which the parties arrived at their

4    settlement is truly the product of arm's length bargaining, rather than collusion or fraud. <u>Millan v.</u>

5    <u>Cascade Water Servs., Inc.</u>, 310 F.R.D. 593, 613 (E.D. Cal. 2015). These concerns are also

6    reflected in Rule 23(e)(2)'s focus on procedural fairness—whether "the class representatives and

7    class counsel have adequately represented the class" and whether "the proposal was negotiated at

8    arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B).

9            As expressed in the Court's order granting preliminary approval, the Court is satisfied that

10   the parties' negotiations constituted genuine and informed arm's length bargaining. (ECF No. 103

11   at 19.) The parties engaged in extensive investigation and discovery, negotiations and a mediation

12   in August 2023. (<u>Id.</u>; ECF Nos. 107 at 15, 107-1 at ¶¶ 30-31.) The parties conducted significant

13   discovery, class counsel engaged an expert who performed a review and analysis of the payroll

14   and timekeeping records and assembled a damages model to present to defendants at mediation,

15   and the investigation and discovery "put[] the parties in an excellent position to assess the

16   strengths and weaknesses of the case, as well as its value." (ECF No. 107-1 at ¶ 15.) Accordingly,

17   the Court concludes that consideration of this factor weighs in favor of granting final approval.

18                   **6.    Experience and Views of Counsel**

19           Class counsel is the firm Mallison & Martinez. Class counsel has submitted a declaration

20   by Mr. Stan S. Mallison describing counsel's experience in wage and hour class action litigation.

21   (ECF No. 107-1.) Mr. Mallison submits that the firm Mallison & Martinez is a class action law

22   firm founded in 2005 by attorneys Stan Mallison and Hector Martinez. (<u>Id.</u> at ¶ 4.) The firm has

23   been involved in over 200 wage and hour class and representative action cases since its founding.

24   (<u>Id.</u> ¶ 6.) Mr. Mallison submits he earned his law degree from Stanford University in 1996 and

25   that he founded Mallison & Martinez in 2005 with Mr. Martinez. (<u>Id.</u> ¶¶ 4, 7-8.) Mr. Martinez

26   graduated from Golden Gate University School of Law in 1998. (<u>Id.</u> ¶ 9.) Cody Bolce is an

27   associate attorney at Mallison & Martinez, graduated from Santa Clara University School of Law,

28   and was admitted to the California Bar in 2019. (<u>Id.</u> ¶ 10.)

1    The Court finds the view of Mr. Mallison that the proposed settlement is fair and

2    reasonable weighs in favor of granting final approval. (ECF No. 107 at 16.)

3                    **7.    Presence of a Governmental Participant**

4        No government entity participated in this case. However, the settlement agreement

5    contemplates payment of $75,000 of the settlement amount to the LWDA under PAGA.

6    (Settlement Agreement at ¶ 55(e)(i).) This too weighs in favor of approval of the settlement. See

7    Adoma, 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in favor of settlement approval);

8    Zamora v. Ryder Integrated Logistics, Inc., 2014 WL 9872803, at *10 (S.D. Cal. Dec. 23, 2014)

9    (same).

10                    **8.    Reaction of the Class Members**

11        "It is established that the absence of a large number of objections to a proposed class

12    action settlement raises a strong presumption that the terms of a proposed class settlement action

13    are favorable to the class members." Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529 (citing

14    cases). The presumption that a settlement is fair, reasonable, and adequate is particularly strong

15    when there is an absence of a single objection to a proposed class action settlement. See id.;

16    Barcia v. Contain-A-Way, Inc., 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009). "A court may

17    appropriately infer that a class action settlement is fair, adequate, and reasonable when few class

18    members object to it." Cruz v. Sky Chefs, Inc., 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19,

19    2014) (citing Churchill Vill., 361 F.3d at 577).

20        According to plaintiff, no class member has objected to the settlement agreement or opted

21    out. (ECF No. 107 at 16.) The parties confirmed at the hearing that there have been no objections

22    to the settlement. Accordingly, consideration of this factor weights significantly in favor of

23    granting final approval.

24                    **9.    Subtle Signs of Collusion**

25        The Court now turns to a review of whether any of the "more subtle signs" of collusion

26    recognized by the Ninth Circuit are present here. See Bluetooth, 654 F.3d at 947.

27        First, the court does not find that class counsel is seeking a disproportionate distribution of

28    the settlement, particularly in light of the fact that the award of attorney's fees sought here—33%

                                                    12

1   of the gross settlement fund—is a common rate in the Ninth Circuit. See Barbosa v. Cargill Meat

2   Sols. Corp., 297 F.R.D. 431, 450 (E.D. Cal. 2013) (listing cases where courts approved attorneys'

3   fees of approximately one-third of the total settlement).

4           Second, the Court notes that defendants agreed not to oppose any application for class

5   counsel fees not to exceed $666,667 and class counsel litigation expenses not to exceed $50,000

6   (Settlement Agreement § III.C.2.), which could be considered a subtle sign of collusion. See Kim,

7   8 F.4th at 1180. However, the attorney's fees are part of the overall settlement agreement and are

8   not "separate and apart from class funds." See Bluetooth, 654 F.3d at 947.

9           Third, the parties did not arrange for an unawarded amount of fees to revert to defendants.

10  Rather, settlement checks that are not cashed before their expiration will be redistributed to the

11  class members under the same distribution formulas set forth in the Settlement Agreement, and

12  any unclaimed funds remaining from the second distributions, will be distributed to Legal Aid at

13  Work, subject to the Court's approval. (Settlement Agreement at § III.F.5.)

14          Based upon its consideration of all of these factors, the court is satisfied that the subtle

15  signs of collusion that the Ninth Circuit has warned of are not present here to warrant rejecting

16  the parties' proposed settlement.

17          In sum, after considering all of the relevant factors, the court finds on balance that the

18  settlement is fair, reasonable, and adequate. See Fed. R. Civ. P. 23(e). Accordingly, the Court will

19  grant plaintiff's motion for final approval of the parties' class action settlement.

20  **IV.    ATTORNEY'S FEES, COSTS, AND INCENTIVE PAYMENTS**

21          Included in their motion, plaintiff has submitted a request for awards of attorney's fees,

22  class counsel's litigation expenses, settlement administrator costs to CPT Group, Inc., and an

23  incentive award for plaintiff. (ECF No. 107 at 20-26.)

24          **A.    Attorney's Fees**

25          This court has an "independent obligation to ensure that the award [of attorneys' fees],

26  like the settlement itself, is reasonable, even if the parties have already agreed to an amount."

27  Bluetooth, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the

28  relationship between the class members and class counsel "turns adversarial." In re Mercury

13

1   Interactive Corp. Secs. Litig., 618 F.3d 988, 994 (9th Cir. 2010); In re Wash. Pub. Power Supply
2   Sys. Secs. Litig., 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a
3   fiduciary role for the class members in evaluating a request for an award of attorney's fees from
4   the common fund. In re Mercury, 618 F.3d at 994; see also Rodriguez v. Disner, 688 F.3d 645,
5   655 (9th Cir. 2012); West Publ'g Corp., 563 F.3d at 968.

6          The Ninth Circuit has approved two methods for determining attorney's fees in such cases
7   where the attorney's fee award is taken from the common fund set aside for the entire settlement:
8   the "percentage of the fund" method and the "lodestar" method. Vizcaino v. Microsoft Corp., 290
9   F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common
10  fund cases to choose either method. Id.; Vu v. Fashion Inst. of Design & Merch., 2016 WL
11  6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal,
12  and mechanical or formulaic application of either method, where it yields an unreasonable result,
13  can be an abuse of discretion." Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997,
14  1007 (9th Cir. 2002). As noted above, the Ninth Circuit has generally set a 25% benchmark for
15  the award of attorneys' fees in common fund cases. Id.; see also Bluetooth, 654 F.3d at 942
16  ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award,
17  providing adequate explanation in the record of any 'special circumstances' justifying a
18  departure.").

19         Reasons to vary the benchmark award may be found when counsel achieves exceptional
20  results for the class, undertakes "extremely risky" litigation, generates benefits for the class
21  beyond simply the cash settlement fund, or handles the case on a contingency basis. Vizcaino,
22  290 F.3d at 1048-50; see also In re Online DVD-Rental, 779 F.3d at 954-55. Ultimately, however,
23  "[s]election of the benchmark or any other rate must be supported by findings that take into
24  account all of the circumstances of the case." Vizcaino, 290 F.3d at 1048. The Ninth Circuit has
25  approved the use of lodestar cross-checks as a way of determining the reasonableness of a
26  particular percentage recovery of a common fund. Id. at 1050 ("Where such investment is
27  minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a
28  lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a

1    higher percentage when litigation has been protracted."); see also In re Online DVD-Rental, 779

2    F.3d at 955.

3        Here, the parties' settlement provides that class counsel will seek an award not to exceed

4    $666,667 of the gross settlement fund, which amounts to 33.3%. (Settlement Agreement

5    § III.C.2.) The requested 33.3% fee is higher than the 25% benchmark rate in the Ninth Circuit,

6    but it is not uncommon for awards to be up to 33.3% for wage and hour class actions in the

7    Eastern District of California. See Barbosa, 297 F.R.D. at 450 (listing cases where courts

8    approved attorneys' fees of approximately one-third of the total settlement). In its order

9    tentatively granting preliminary approval of the proposed settlement in this action, the court noted

10   that it did not need to determine whether a 33.3% award was reasonable at that time because class

11   counsel would eventually move for attorney's fees at a later time. (ECF No. 103 at 21.) The Court

12   found that the anticipated request was "not so disproportionate to the relief provided to the class

13   that it 'calls into question the fairness of the proposed settlement.'" (Id. (citation omitted).) In this

14   pending motion, plaintiff contends that a fee award of 33.3% of the gross settlement fund is

15   reasonable here for several reasons.

16       Plaintiff asserts that despite the Ninth Circuit's 25% benchmark, in most common fund

17   cases, the award exceeds the benchmark. (ECF No. 107 at 20-21, 23 (citing cases).) Plaintiff also

18   asserts that class counsel provided experienced, competent representation and obtained a net

19   recovery of $1,113,458 for 730 workers on a contingency basis, which presented considerable

20   risk. (Id. at 21.) The net settlement fund will provide class members with an average gross

21   recovery of approximately $1,525.29 and PAGA group members with an average gross recovery

22   of approximately $334.93. (Id. at 22.) Plaintiff noted significant risks in pursing this case,

23   including that the Court had wide discretion to grant to deny certification or that defendants may

24   become insolvent. (Id.) Further, plaintiff noted class counsel's experience and skill and high

25   quality of work performed. (Id. at 22-23.) Plaintiff also contends that no class members objected

26   to the amount of attorney's fees after being provided notice. (Id. at 22.) Plaintiff's request for

27   attorney's fees thus appears to have the support of the class and that support weighs in favor of

28   the requested award.

The Court next turns to the lodestar calculation in order to cross-check the reasonableness of the requested attorney's fee award. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" Bond v. Ferguson Enters., Inc., 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Moreover, beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier can be applied. "Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing Behrens v. Wometco Enters., Inc., 118 F.R.D. 534, 549 (S.D. Fla. 1988)); see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.").

Here, class counsel seeks attorney's fees in the amount of $666,667.00, which is 33.3% of the settlement amount. (Settlement Agreement at § III.C.2; ECF No. 107 at 20-23; ECF No. 107-1 at ¶ 20.) Originally, class counsel stated that the lodestar report reflected a lodestar of 295.76 hours and total fees of $173,890. (ECF No. 107 at 20; ECF No. 107-6.) However, the report provided did not include sufficient information for the Court to do the lodestar cross-check. For example, the report did not include whether the individuals listed were attorneys, paralegals, or other staff, or each individual's years of experience. At the hearing, the Court asked class counsel to provide a supplemental declaration providing clarification. Class counsel filed a supplemental declaration (ECF No. 111) stating that the original report reflected only a portion of the total time the firm spent on this case (id. ¶ 2.) Class counsel filed an updated report incorporating more time spent on this case. (ECF No. 111-1.) Class counsel also stated that sometime entries were removed, and class counsel believes the updated report includes only the time spent on core tasks essential to prosecuting the case. (ECF No. 111 ¶ 6.) The supplemental declaration also lists the role of each individual who billed time on this case, but the declaration does not include the years of experience for each individual. (See ECF No. 111 ¶¶ 11-24.)

The Mallison & Martinez employees who worked on this matter include: a founding

16

partner with almost 30 years of experience with an hourly rate of $1,141; a founding member with 27 years of experience with an hourly rate of $1,141; a senior associate with an hourly rate of $948; a senior attorney with an hourly rate of $948; an associate with an hourly rate of $581; a senior attorney with 7 years of experience with an hourly rate of $839; a senior attorney with an hourly rate of $948; a junior attorney with an hourly rate of $581; a senior attorney with an hourly rate of $839; a senior associate with an hourly rate of $839; an associate with an hourly rate of $581; and five paralegals with hourly rates of $258. (ECF No. 107-1 at ¶¶ 7-10; ECF No. 111; ECF No. 111-1 at 2.) The final report reflects a lodestar amount of $720,600 with 824.7 hours worked. ECF No. 111 at ¶ 6; see Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'" (alterations in original) (citation omitted)). Class counsel contends that these rates are based on the Laffey Matrix. (Id.) However, courts in the Eastern District repeatedly decline to use the matrix. See, e.g., Lusk v. Five Guys Enters., LLC, 2023 WL 4134656, at *29 (E.D. Cal. June 22, 2023); Momentum Com. Funding, LLC v. Project Storm, LLC, 2022 WL 2817429, at *9 (E.D. Cal. July 18, 2022). The Court will therefore rely on its own knowledge of customary legal rates in Sacramento and also survey cases in setting a reasonably hourly rate. See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011).

The Court notes that, with a few exceptions, it is unclear how many years of experience each attorney has. Accordingly, the Court will apply the same rate for all attorneys except for Mr. Mallison and Mr. Martinez. The Court finds that the rates provided for all attorneys, partners, and paralegals do not reflect the prevailing market rate in Sacramento for attorneys of comparable skill, experience, and reputation. See, e.g., Am. Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024) (awarding $700 per hour for partners and $375 per hour for associate attorneys); Mostajo v. Nationwide Mut. Ins. Co., 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023) (accepting an hourly rate of $375 for a third year attorney, and between $650 and $750 for attorneys with over thirty years of experience); Gong-Chun v. Aetna Inc., 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300

1   and $420 per hour for associates and between $490 and $695 per hour for senior counsel and

2   partners); <u>Velasco v. Mis Amigos Meat Market, Inc.</u>, 2013 WL 5755054, at *12 n.4 (E.D. Cal.

3   Oct. 23, 2013) (approving a partner hourly rate of $650, a senior associate hourly rate of $495,

4   and a junior associate hourly rate of $395); <u>Sanchez v. Frito-Lay, Inc.</u>, 2021 WL 1813190, at *9-

5   10 (E.D. Cal. May 6, 2021) (accepting hourly rate of $200 for paralegals); <u>see also</u> <u>Martinez v.</u>

6   <u>Semi-Tropic Coop. Gin & Almond Huller, Inc.</u>, 2023 WL 2569906, at *33-34 (adjusting the

7   hourly rate of Mr. Mallison and Mr. Martinez to $525 in a different case, and adjusting hourly

8   rate of associates to $200 and $300 depending on experience). Accordingly, the Court reduces the

9   hourly rate for the paralegals to $200, the hourly rate of the associates and attorneys to $375, and

10  the hourly rates of the partners to $600.

11      Based on this, the total lodestar amount is reduced to $361,570. The total amount sought

12  in attorney's fees ($666,667 or 33.3% of the settlement amount) is about 2 times more than the

13  lodestar amount, which is within the accepted range for a multiplier. <u>See</u> <u>Van Vranken</u>, 901 F.

14  Supp. at 298; <u>see also</u> <u>In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions</u>, 148 F.3d

15  at 341. Accordingly, considering the lodestar cross-check and the fact that this case was

16  conducted purely on a contingency fee basis (ECF No. 107 at 23), the court approves an award of

17  $666,667 in attorney's fees, equal to 33.3 percent of the common fund.

18      **B.    Costs and Expenses of Class Counsel**

19      Additionally, class counsel seeks to recover the costs and expenses advanced while

20  prosecuting this litigation. Such awards "should be limited to typical out-of-pocket expenses that

21  are charged to a fee paying client and should be reasonable and necessary." <u>In re Immune</u>

22  <u>Response Secs. Litig.</u>, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include

23  reimbursements for: "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone,

24  and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class

25  action notices; 8) experts, consultants, and investigators; and 9) mediation fees." <u>Id.</u>

26      Here, class counsel request reimbursement in the amount of $50,000, when they have

27  incurred $51,347 in costs. (ECF No. 107-1 at ¶ 41; ECF No. 107 at 23-24; Settlement Agreement

28  § III.C.2.) Plaintiff lists $11,945.80 in "class administrator fees" in exhibit 6 (ECF No. 107-7).

The Court clarified with the parties that these class administrator fees are not duplicative of the settlement administrative costs awarded to the settlement administrator in the Settlement Agreement. The Court has reviewed class counsel's declaration and finds all the charges incurred to be reasonable. Accordingly, the Court will approve the reimbursement of costs and expenses in the amount requested.

### C.    Incentive Award

Courts frequently approve "service" or "incentive" awards in class action cases. West Publ'g Corp., 563 F.3d at 958-59. Generally speaking, incentive awards are meant to recognize the effort of class representatives "for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. To determine whether an incentive award is reasonable, courts consider:  (1) "the risk to the class representative in commencing a suit, both financial and otherwise"; (2) "the notoriety and personal difficulties encountered by the class representative"; (3) "the amount of time and effort spent by the class representative"; (4) "the duration of the litigation"; and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Beellinghausen, 306 F.R.D. at 266 (citations omitted).

Plaintiff seeks an award totaling $55,375, separated into $10,000 in recognition of plaintiff's efforts and work on behalf of the class and $45,375 in exchange for a general release of his claims. (Settlement Agreement at § III.C.1.) In the order granting preliminary approval, the Court noted that the incentive award of up to $55,375 was 2.77% of the gross settlement amount of $2,000,000 and almost forty times the amount that other class members were expected to receive ($1,400 at the time), which was higher than what has been granted in other cases. (ECF No. 103 at 15.) For purposes of provisional certification of the class, the Court did not find that the proposed incentive award was so disproportionate that it necessarily rendered plaintiff an inadequate representative. (Id.) However, the Court stated it would consider the amount at the final settlement step, and asked plaintiff to provide more information about the settlement process and how negotiations occurred. (Id. at 14.)

The Court has considered the issue and reviewed plaintiff's declaration. The Court finds

1    that an incentive award of $55,375 is excessive in this case. An award of $55,375 is almost 37

2    times the amount the average class member is expected to receive in this case ($1,525.29). (ECF

3    No. 107-3 at ¶ 12.) Further, the largest payment to any class member is expected to be

4    $17,699.71, and plaintiff's award is over three times this amount. Courts have been reluctant to

5    approve incentive awards constituting such a great portion of the common fund. See, e.g.,

6    Ontiveros v. Zamora, 303 F.R.D. 356, 365 (E.D. Cal. 2014); Clayton v. Knight Transp., 2013 WL

7    5877213, at *12 (E.D. Cal. Oct. 30, 2013) (finding in its order granting preliminary approval that

8    a downward adjustment of the plaintiff's incentive award from $7,500 to $3,500 was warranted

9    given the large disproportion of the award to the recovery of the unnamed class members); Ko v.

10   Natura Pet Prods., Inc., 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an

11   incentive award of $20,000, comprising one percent of the approximately $2 million common

12   fund was "excessive under the circumstances" and reducing the award to $5,000); Sandoval v.

13   Tharaldson Emp. Mgmt., Inc., 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (citing cases);

14   see also Mostajo, 2023 WL 2918657, at *14 (finding incentive award of $50,000 for two

15   plaintiffs, totaling 1.3% of the gross settlement fund "noticeably higher than the typical

16   enhancement award in this district," but granting award in part because combined both plaintiffs

17   spent about 280 hours and "significant work on behalf of the class").

18        Plaintiff actively participated in this litigation, spending approximately 115 hours

19   participating in and monitoring this case over the past 11 years. (See ECF No. 107-8 at 5.)

20   Plaintiff states he engaged in numerous conferences with counsel, participated in the litigation

21   and provided input into the case, stayed informed regarding the status of the case, and provided

22   input regarding litigation and settlement strategy. (Id. at 3.) Plaintiff states he incurred expenses

23   approximating $1,000. (Id. at 5.) Plaintiff believes the incentive award is reasonable, given the

24   substantial risks he took bringing this action, the time he devoted, and the toll he experienced for

25   releasing his individual claim. (Id. at 6.) Plaintiff states he was informed about the risks from

26   attaching his name to this lawsuit and his concerns about future employers learning about his

27   involvement. (Id. at 6.)

28        However, the Court finds the incentive award plaintiff proposes is excessive. The award

1  plaintiff proposes amounts to $481.52 an hour. "Incentive awards should be sufficient to

2  compensate class representatives to make up for financial risk,—for example, for time they could

3  have spent at their jobs." Ontiveros, 303 F.R.D. at 366 (citation omitted). "Overcompensating

4  named plaintiffs at the expense of a reduction in the common fund available to class remembers

5  could encourage collusion at the settlement stage of class actions where a named plaintiff's

6  interest naturally diverges from that of the class, compromising his role as a judge of adequacy."

7  (Id.)

8         The cases plaintiff cites in support are distinguishable from this case. Plaintiff cites Van

9  Varnken v. Atlantic Richfield Co., 901 F. Supp. 294 (N.D. Cal. Aug. 16, 1995) to show that a

10  $50,000 incentive award was approved. (ECF No. 107 at 16.) However, the total settlement fund

11  in that case was over $76,000,000. Van Varnken, 901 F. Supp. 294 at 296. The $50,000 award

12  was only 0.06% of the total award. Plaintiff also cites Ingram v. The Coco-Cola Co., 200 F.R.D.

13  685 (N.D. Ga. 2021), where the incentive award to multiple plaintiffs was $300,000, but the total

14  settlement award was over $150 million. (Id. at 688.)

15         This Court finds that an incentive award of 1% of the settlement amount, totaling $20,000

16  is appropriate here, taking into account that plaintiff is also waiving the opportunity to bring

17  individual claims. See Ontiveros, 303 F.R.D. at 366; Bellinghausen, 306 F.R.D. at 267.

18         **D.    Settlement Administrator Costs**

19         The court has approved appointment of CPT Group, Inc. as the settlement administrator in

20  this action. In the settlement agreement, the parties did not provide an estimate for the costs of

21  administration. (See Settlement Agreement § III.C.3.) However, it appears the estimated costs for

22  the settlement administrator is $14,500. (See ECF No. 107 at 2; ECF No. 107-3 at ¶ 14; ECF No.

23  107-3 at 9.) Plaintiff's motion itself requests $11,000 (ECF No. 107 at 10), but an attached

24  declaration and the notice to class members states $14,500 (ECF No. 107-3 at ¶ 14; ECF No. 107-

25  3 at 9). The Court finds the administration costs of $14,500 reasonable and will direct payment in

26  the requested amount.

27  **V.    CY PRES DISTRIBUTION**

28         Since many class action settlements result in unclaimed funds, the parties should have a

21

plan for distribution of the unclaimed funds. See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1305, 1307 (9th Cir. 1990). Options for such distribution include cy pres distribution, escheat to the government, and reversion to the defendants. Id. at 1307. Here, if any Class Member cannot be located within one hundred and eighty days of the expiration of the initial settlement checks, funds represented by uncashed settlement checks will be redistributed to the Class Members under the same distribution formulas set forth in the Settlement Agreement. Any unclaimed funds remaining after a second distribution to participating class members will be distributed to Legal Aid at Work, subject to Court approval. (Settlement Agreement § III.F.5; ECF No. 107-1 § 23; ECF No. 107-5). The parties therefore indicate that Legal Aid at Work be a cy pres beneficiary in this matter for unclaimed funds from the second distribution of checks.

The Ninth Circuit determined a proposed cy pres beneficiary should be "tethered to the nature of the lawsuit and the interest of the silent class members." Nachshin v. AOL, LLC, 663 F.3d 1034, 1039 (9th Cir. 2011). There must be "a driving nexus between the plaintiff class and the cy pres beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) (citing Nachshin, 663 F.3d at 1038). Without this tethering, the distribution of funds "may create the appearance of impropriety" by answering "to the whims and self interests of the parties, their counsel, or the court." Nachshin, 663 F.3d at 1039. A cy pres award should not benefit a group that is "too remote from the plaintiff class." Six Mexican Workers, 904 F.2d at 1308. Courts should consider whether awards to the beneficiary "(1) address the objectives of the underlying statutes, (2) target the plaintiff class, or (3) provide reasonable certainty that any member will be benefitted." See Nachshin, 663 F.3d at 1039-1040 (citing Six Mexican Workers, 904 F.2d at 1308-09). Further, the Court should consider whether the cy pres distribution is appropriate given the "size and geographic diversity" of the class members. See id. at 1040-41.

The Court did not address the cy pres beneficiary at the preliminary approval stage. However, neither did plaintiff clearly address this in their motion for final approval, nor did the parties address this at the hearing. Accordingly, without the necessary information to determine whether Legal Aid at Work is an appropriate cy pres beneficiary, the Court declines to appoint Legal Aid at Work as the cy pres beneficiary at this stage. See Sanchez v. Mohawk Industries,

1    Inc., 2025 WL 2694749, at *22 (E.D. Cal. Sept. 22, 2025).

2            This does not preclude the Court from granting final approval, however. The Ninth Circuit

3    observed that issues related to the identity of a cy pres beneficiary are not generally ripe until

4    funds remain unclaimed. See Rodriguez v. West Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009)

5    (finding cy pres distribution "becomes ripe only if the entire settlement fund is not distributed to

6    class members" and declining to determine propriety of cy pres distribution at that time). At this

7    stage the proceedings, the Court is unable to predict whether funds will issue from the second

8    distribution to class members. The Court will retain jurisdiction over the Settlement, and the

9    parties may seek approval of an appropriate cy pres beneficiary if the issue becomes ripe. See

10   Hartless v. Clorox Co., 273 F.R.D. 630, 642 (S.D. Cal. 2011) (finding the issue of cy pres

11   distribution "premature until the claims process is concluded and it is determined that there are

12   unclaimed funds"); see also Stark v. Patreon, Inc., 2025 WL 1592736, at *4 (N.D. Cal. June 5,

13   2025) (finding the issue of the identity of the cy pres beneficiary if there were funds remaining

14   that were not subject to a second pro rate distribution "not ripe" at the final approval stage).

15   Accordingly, the failure to show Legal Aid at Work is an appropriate cy pres beneficiary does not

16   weigh against final approval. See Sanchez, 2025 WL 2694749, at *22.

17                                          **ORDER**

18           For the above reasons, it is HEREBY ORDERED that:

19   1.      Plaintiff's motion for final approval of the class action settlement (ECF No. 107) is

20           GRANTED, and the court approves the settlement as fair, reasonable, and

21           adequate;

22   2.      Plaintiff's request for an award of attorney's fees and costs, incentive award, and

23           settlement administrator costs is also GRANTED in part;

24   3.      The court awards the following sums:

25           a.      Class counsel shall receive $666,667.00 in attorney's fees and $50,000 in

26                   expenses;

27           b.      Plaintiff shall receive $20,000.00 as an incentive payment;

28           c.      CPT Group, Inc. shall receive $14,500.00 in settlement administration

                                                23

costs; and

d.    The parties shall direct payment of 75% of the settlement allocated to the PAGA payment, or $75,000.00 to the LWDA as required by California law, and the remainder of the PAGA payment, $25,000.00, shall be included in the net settlement fund;

4.    The parties are directed to effectuate all terms of the settlement agreement and any deadlines or procedures for distribution set forth therein;

5.    The Court DECLINES to appoint Legal Aid at Work as the cy pres beneficiary, without prejudice to renewal of the request following disbursement of the settlement shares to Class Members;

6.    This action is dismissed with prejudice in accordance with the terms of the parties' amended settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

7.    The Clerk of the Court is directed to close this case.

Dated:  September 25, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

5, roja.0697.14

24